[Nos. 31063-1-I; 32360-1-I. Division One. November 29, 1993.]

ML PARK PLACE CORPORATION, ET AL, *Appellants,* v. RICHARD C. HEDREEN, ET AL, *Respondents.*

*In the Matter of the Arbitration Between* MERRILL LYNCH LIFE INSURANCE COMPANY, *Claimant, and* RICHARD C. HEDREEN, *Respondent.*

*Delbert Miller, Roger Leishman*, and *Bogle & Gates*, for appellants.

*Ronald Leighton, James Seely*, and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim*, for respondents.

PEKELIS, A.C.J. — ML Park Place Corporation and Merrill Lynch Life Insurance Company[1] appeal from two orders in favor of Richard Hedreen. These orders were entered in the wake of the arbitration of a claim concerning the terms of the parties' joint venture agreement. ML Park Place does not here dispute the merits of the award in favor of Hedreen, but instead contends that the trial court should have vacated that portion of the award attributable to Hedreen's counterclaim on the ground that the arbitrators had no contractual authority over it. Additionally, ML Park Place appeals the trial court's refusal to vacate the judgment confirming the award, contending that the award was procured through Hedreen's bad faith representations to the arbitrators. Finding no merit in either of ML Park Place's arguments, we affirm.

## I
### FACTS

In 1970, Hedreen and ML Park Place's predecessor, Family Life Building Co. (FLBC), entered into a written joint venture agreement for the purpose of developing and owning the Park Place Building (hereinafter the Building) in downtown Seattle. Simultaneously, the joint venture entered into a management agreement with Hedreen and an agreement with Family Life Insurance Company (FLIC), FLBC's parent

---

[1] Although both ML Park Place and Merrill Lynch are parties to this appeal, for the sake of convenience we will hereinafter (except where the context requires otherwise) refer to appellants as ML Park Place.

company, pursuant to which FLIC agreed to enter into a lease upon completion of the Building. When the Building was completed in 1972, FLIC leased office space from the joint venture.

The joint venture endured and prospered despite several changes in the identity of the corporate venture partner. Then, in 1991, $21 million in joint venture obligations under two bank notes came due. Being unable to renew the notes or arrange alternative financing, Merrill Lynch Life Insurance Company (MLLIC), the then-current joint venture partner and fiscal administrator, initiated a capital call pursuant to the provisions of the joint venture agreement in order to satisfy the note obligations.

Hedreen refused to pony up, insisting that the capital calls were wrongful and in violation of provisions of the joint venture agreement. MLLIC satisfied the note obligations itself, and then, under the provisions of an arbitration clause in the joint venture agreement,[2] commenced an arbitration against Hedreen to resolve the dispute. MLLIC, and subsequently its assignee, ML Park Place, sought to extinguish Hedreen's interest in the joint venture owing to the failure to make the capital contributions. ML Park Place also sought restitution of funds allegedly converted by Hedreen in his capacity as property manager, alleging that Hedreen · had wrongfully made cash distributions in violation of his fiduciary duties and the joint venture agreement.

Hedreen interposed counterclaims against MLLIC, alleging that MLLIC had reneged on a promise to refinance the joint venture debt and that MLLIC had caused FLIC to breach its commitment to enter into an extended 10-year lease on seven floors in the Building. In his response to MLLIC's demand for arbitration, Hedreen asserted that MLLIC's actions constituted "a violation of the Joint Venture Agreement and a

---

[2]The clause reads as follows: "Any disputes which are not to be determined in accordance with other provisions of this Joint Venture Agreement, which may arise between or among the joint venturers in connection with this joint venture and/or to rights of any joint venturers, shall be determined by arbitration, in

breach of the fiduciary duty owed to its partner in this venture."

After the arbitration panel had been selected, ML Park Place requested that the panel consider the arbitrability of Hedreen's counterclaims at a preliminary hearing. According to ML Park Place, "[a] threshold matter for the panel to consider is whether, and if so to what extent, those issues are properly before the Panel." The panel concluded the counterclaims were arbitrable; in a letter written prior to the second preliminary hearing, ML Park Place again objected, stating:

> [W]e renew the objection we raised at the December 4 Preliminary Hearing regarding the arbitrability of Hedreen's counterclaims . . .. MLLIC is being compelled to arbitrate Hedreen's counterclaims, and it does so under protest.

The arbitration proceeded. ML Park Place raised the question of the arbitrability of Hedreen's counterclaims with the arbitrators again, making reference to the issue in closing argument and in its "Post-Hearing Brief", where it argued that the counterclaims were not within the jurisdiction of the arbitration.

The award issued on May 7, 1992. The arbitrators denied all claims asserted by ML Park Place, and found that ML Park Place had committed breaches of the joint venture agreement and had breached its fiduciary duties to Hedreen under the agreement. The panel assessed $7 million in damages against ML Park Place.

Hedreen moved in superior court to confirm the arbitration award, and ML Park Place petitioned to vacate, modify, or correct the award under the Washington arbitration act, RCW 7.04.180. ML Park Place argued that Hedreen's counterclaims were not within the scope of the parties' arbitration agreement, that the arbitrators had exceeded their powers and decided a claim that was not validly submitted to them, and that the award should therefore be modified to delete the damages award in favor of Hedreen.

---

accordance with the rules and provisions of the American Arbitration Association."

The trial court denied ML Park Place's motion. Preliminarily, the court determined that the record did not establish a waiver of judicial review of arbitrability. Yet, "given the presumption in favor of arbitration, the very broad scope of the arbitration clause, and the necessary inference from the award itself as to its basis", the court concluded that ML Park Place had failed to establish that the issue was nonarbitrable. Accordingly, the court confirmed the award and entered judgment on July 27, 1992. ML Park Place filed an appeal of that judgment in due course.

Meanwhile, on May 12, 1992, MLLIC had exercised its contractual option to purchase Hedreen's interest in the joint venture. Because the parties were unable to agree on the purchase price, they invoked the appraisal procedure provided for in the joint venture agreement.[3]

Shortly after the appraisal process was completed, ML Park Place moved to vacate the July 27 judgment under CR 60(b). ML Park Place contended that Hedreen and his expert witness, Katzenberger, had opportunistically and in bad faith changed their position on the value of the Building. According to ML Park Place, throughout the arbitration Hedreen and Katzenberger had represented to the panel that the value of the Building had diminished from $50 million to $29 million owing to the absence of the extended FLIC lease, while during the appraisal process they represented that the "as is" (*i.e.*, without the FLIC lease) value was $47 million.

ML Park Place argued that at the arbitration Hedreen had misrepresented his position regarding the impact of the FLIC vacancy in order to obtain an inflated damage award. According to ML Park Place, Hedreen's "flip-flop" constituted newly discovered evidence demonstrating the arbitration award was procured by "undue means", which justified

---

[3]In accordance with this procedure, each party nominated one appraiser, and those two appraisers nominated a third. ML Park Place selected Richard McKown, who had been its expert witness at the arbitration. Hedreen selected Jim Katzenberger, who had been his expert witness at the arbitration. Together, they nominated the third appraiser, John Kloster.

vacation of an arbitration award under the Washington arbitration act, RCW 7.04.160(1).

The trial court ultimately denied ML Park Place's motion to vacate.[4] In a letter ruling, the court explained that "[t]he 'flip-flop' . . . is not, by itself, sufficient to raise substantial issues as to fraud or undue means." The court was convinced that many possible explanations for the change existed; thus, it concluded that "[a]n arbitration award should not be subject to challenge because different appraisals are offered later."

Finally, the court ruled that the provisions of the arbitration act, RCW 7.04, rather than CR 60(b), apply to vacation of arbitration awards, and thus the motion to vacate was untimely under the 90-day limit in RCW 7.04.180. The court further noted that ML Park Place's argument regarding Hedreen's change in position had already been made at the hearing on the initial motion to vacate the arbitration award.[5]

ML Park Place then appealed the order denying its motion to vacate. The two appeals were linked by this court for purposes of argument and disposition. Because it is appropriate to resolve both appeals in a single opinion, these cases are hereby consolidated under cause 31063-1-I.

## II
### MOTION TO VACATE ARBITRATION AWARD

As a threshold matter, we decide whether ML Park Place waived judicial review of the arbitrability issue. Hedreen argues that by voluntarily and repeatedly asking the arbitration panel to rule on arbitrability, ML Park Place submitted the issue to arbitration and thereby waived its right to judicial review.

---

[4]The court had initially granted ML Park Place's motion, but then reinstated the judgment upon Hedreen's motion for reconsideration.

[5]At that time, ML Park Place submitted a June 16, 1992, letter from Hedreen to the president of ML Park Place in which Hedreen expressed an opinion that a likely appraisal value for the building would be $38 to $48 million. ML Park Place asserted that this change in position demonstrated that the $7 million damage award was "erroneous on its face" and should be vacated because it was not "a final and definite award upon the subject matter submitted". RCW 7.04.160(4).

Hedreen relies on the sole Washington case to address this issue, *W.A. Botting Plumbing & Heating Co. v. Constructors-Pamco*, 47 Wn. App. 681, 736 P.2d 1100 (1987). In *Botting*, the appellant had contested the arbitrator's jurisdiction in a memorandum submitted after the completion of the arbitration hearing. After rejecting the merits of the appellant's arbitrability argument and affirming the trial court's confirmation of the award, this court offered the following observations in dicta:

> We also note, but do not rely on it for this decision, that [appellant's] failure to raise the issue of arbitrability by a motion to stay arbitration, coupled with its submission of the arbitrability of the issue to the arbitrator, could be construed as a waiver of its rights to pursue the issue in the courts. A party that chooses arbitration as the arena within which to argue arbitrability should be precluded from subsequently raising the issue again in the courts . . ..

(Citations omitted.) 47 Wn. App. at 685-86. The ostensible force of these observations, however, was limited by the following footnote:

> The party objecting to jurisdiction is apparently on the horns of a dilemma: If it submits the issue it cannot raise the issue again in the courts. If it raises the issue initially in the courts, it cannot appeal because a court order compelling arbitration is not a final order. However, this dilemma is more apparent than real if the waiver rule is limited to a true "submission" of the issue to the arbitrator as distinct from a circumstance where a party is compelled to submit. In the latter, jurisdiction may be raised in a motion to vacate or modify. In the instant matter, it is unclear from the record as to whether [appellant] "submitted" the issue or whether it merely attempted to preserve the claimed error.

47 Wn. App. at 686 n.3.

The facts of *Botting* did not require us to define "true 'submission'" or to explain the circumstances in which a party would be deemed "compelled to submit". Thus, this dicta fails to provide a helpful framework for resolution of the instant situation. Here, the appellant unquestionably briefed and argued the question of arbitrability, but at the same time insisted on noting for the record that it was being

compelled to arbitrate and was proceeding "under protest". There was no motion to stay the arbitration.[6]

We have discovered only one case, *Fidelity & Cas. Co. v. Dennis*, 229 Cal. App. 2d 541, 40 Cal. Rptr. 418 (1964), in which this issue has been squarely addressed in a factually similar context.[7] In *Dennis*, the respondent filed a demand for arbitration with the American Arbitration Association pursuant to the provisions of an automobile insurance policy. The appellant replied to the demand by letter, contending that the issue was not one which it had agreed to arbitrate under the arbitration provision in the policy. Following selection of the arbitrator and the scheduling of a hearing date, appellant's counsel requested by letter that the arbitrator determine the preliminary issue of jurisdiction before proceeding to the merits. At the hearing, appellant argued the matter of the arbitrator's jurisdiction and was overruled. Appellant then reserved the right thereafter to raise the question of jurisdiction and proceeded with the arbitration, which culminated in an award in favor of respondent. Respondent moved to confirm the award and appellant petitioned to vacate. The judge entered a judgment confirming the award, and appellant appealed.

The California Court of Appeal initially observed that parties may, if they wish, agree to submit to arbitration the issue of arbitrability itself, and if the issue is properly before the arbitrator, the arbitrator's determination thereon is binding on the court in a confirmation proceeding. 229 Cal. App.

---

[6]*Cf. ACF Property Mgt. v. Chaussee*, 69 Wn. App. 913, 921-22, 850 P.2d 1387 (1993) (plaintiff deemed to have been compelled to submit where, over plaintiff's objection that dispute was nonarbitrable, trial court granted defendant's motion to stay legal proceedings pending arbitration).

[7]The opinion relied upon by the *Botting* court, *Maddy v. Castle*, 58 Cal. App. 3d 716, 130 Cal. Rptr. 160 (1976), provides no guidance, for it also discussed waiver only in dicta. Even the original source of the quotation, *Titan Enters., Inc. v. Armo Constr., Inc.*, 32 Cal. App. 3d 828, 831, 108 Cal. Rptr. 456, 458 (1973), constitutes dicta, since in that case the appellant, who had twice only objected to arbitration in the arbitration proceeding, was permitted to raise the arbitrability issue by way of a motion to vacate.

2d at 543-44. Relying on this principle, the court held that appellant had failed to preserve the issue of arbitrability, reasoning as follows:

> Appellant twice submitted [the issue] on its merits . . .. It argued that issue in its letters and documents submitted to the arbitrator . . . and in its counsel's letter . . . it again set out that issue as a matter to be decided by the arbitrator. Having thus submitted that issue for determination by the arbitrator, and having lost on the issue so submitted, its subsequent protests at the hearing came too late and its "reservation" of jurisdiction at that time was fruitless because there then remained nothing to reserve.

229 Cal. App. 2d at 544.

If we adopt the rationale of *Dennis,* then ML Park Place would be deemed to have waived its right to judicial review of the arbitrability issue. ML Park Place did not merely state its objection on the record at the arbitration, but rather presented the arbitrability issue to the arbitrators *and* attempted to reserve it for subsequent judicial review.

We believe, however, that the better approach to waiver in the arbitrability setting is to be found in federal authority, which permits judicial review of arbitrability even where the objecting party neglected to seek a court order staying arbitration and chose to submit the arbitrability issue to the arbitrator:

> [W]here a party voluntarily submits an issue to arbitration without challenging the arbitrability of that issue, and where the merits are ruled on by the arbitrator, that party may be deemed to have waived his right to judicial review of the arbitrability issue. We have always required, however, that the party submitting to arbitration "clearly indicate[] his willingness to forego judicial review" for waiver to be established.
>
> In this case, [appellant] has repeatedly objected to . . . arbitrability . . .. Indeed . . . [appellant] has consistently maintained this position, before the arbitrator, the district court, and now on appeal. Accordingly, the fact that it argued the merits before the arbitrator will not be construed as a waiver of its right to judicial review on the arbitrability issue.

(Citations omitted.) *Pennsylvania Power Co. v. Local Union 272 of IBEW,* 886 F.2d 46, 50 (3d Cir. 1989); *accord, Lukens Steel Co. v. United Steelworkers,* 989 F.2d 668, 679 n.11 (3d Cir. 1993); *see also Jones Dairy Farm v. United Food &*

*Comm'l Workers Int'l Union*, 760 F.2d 173, 175-76 (7th Cir.), *cert. denied*, 474 U.S. 845 (1985); *Fansteel, Inc. v. International Ass'n of Machinists & Aerospace Workers*, 708 F. Supp. 891, 895-97 (N.D. Ill. 1989) (party does not waive judicial review of arbitrability when it urges before arbitrator that dispute is not arbitrable, allows the arbitrator to decide arbitrability, but clearly indicates it is not waiving its right to a later court determination), *aff'd*, 900 F.2d 1005 (7th Cir.), *cert. denied*, 498 U.S. 851 (1990).

The policy rationale for permitting reservation of an objection to arbitrability was well articulated by the Iowa Supreme Court:

> Although some cases have found a waiver [where a party has participated in the merits after the arbitrator's decision in favor of arbitrability], we believe the preferable rule is that a timely objection to arbitrability preserves the right to challenge the award after participating in the arbitration proceeding. To hold otherwise would be adverse to the policy favoring arbitration as a substitute for litigation because such parties would hereafter either initiate a court action or totally refrain from participating in the arbitration.

*Hawkins/Korshoj v. State Bd. of Regents*, 255 N.W.2d 124, 127 (Iowa 1977).

This approach is more consistent with the "strong public policy in this state favoring arbitration of disputes." *Herzog v. Foster & Marshall, Inc.*, 56 Wn. App. 437, 443, 783 P.2d 1124 (1989). Because a finding of waiver under the circumstances would advance neither the policy favoring arbitration nor the purposes of arbitration agreements,[8] we conclude that ML Park Place did not waive its right to judicial review of the arbitrability issue.

Thus, we turn to the "substantive" issue of the arbitrability of Hedreen's counterclaim. ML Park Place first contends that Hedreen's counterclaims were outside of the scope of the arbitration clause in the joint venture agreement and

---

[8]*See, e.g.*, Braman, *The 1943 Washington Arbitration Act*, 22 Wash. L. Rev. 117, 118 (1947) ("The purpose of . . . arbitration agreements is to provide an inexpensive, speedy, private, and effective method of deciding controversies out of court.").

therefore nonarbitrable. ML Park Place specifically argues that the trial court erroneously deferred to the arbitrators' decision as to arbitrability.

■ It is well established that arbitration in Washington is regulated by statute, and that superior court and appellate court review of an arbitration proceeding is controlled by RCW 7.04, which strictly limits review to the grounds contained in RCW 7.04.160-.170. *ACF Property Mgt. v. Chaussee*, 69 Wn. App. 913, 918, 850 P.2d 1387 (1993); *Martin v. Hydraulic Fishing Supply, Inc.*, 66 Wn. App. 370, 372, 374, 832 P.2d 118 (1992).

Here, ML Park Place sought review of the arbitration proceeding under both RCW 7.04.160(4) (award may be vacated "[w]here the arbitrators exceeded their powers") and RCW 7.04.170(2) (award may be modified or corrected "[w]here the arbitrators have awarded upon a matter not submitted to them"). The substance of the objection is nonetheless singular: ML Park Place asserts that Hedreen's counterclaim, upon which the award is based, was beyond the arbitrators' jurisdiction because it arose from a dispute not subject to arbitration pursuant to the arbitration clause in the joint venture agreement.

■ The principles applicable to issues of contractual arbitrability were articulated by this court in *W.A. Botting Plumbing & Heating Co. v. Constructors-Pamco*, 47 Wn. App. 681, 736 P.2d 1100 (1987):

> (1) the duty to submit a matter to arbitration arises from the contract itself; (2) the question of whether parties have agreed to arbitrate a dispute is a judicial one unless the parties clearly provide otherwise; (3) a court should not determine the underlying merits of a dispute in determining the arbitrability of an issue; and (4) arbitration of disputes is favored by the courts.

47 Wn. App. at 683.[9]

---

[9]The court explained that these principles were derived from the United States Supreme Court's *Steelworkers* trilogy. 47 Wn. App. at 683 & n.1 (citing *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 4 L. Ed. 2d 1403, 80 S. Ct. 1343 (1960); *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1358 (1960)).

Because review of an arbitration award on the merits is not permitted, *Barnett v. Hicks*, 119 Wn.2d 151, 153, 829 P.2d 1087 (1992), a court's independent legal determination of arbitrability is limited to review of the arbitration clause, the contentions of the parties, and the face of the award itself. *See Westmark Properties, Inc. v. McGuire*, 53 Wn. App. 400, 402, 766 P.2d 1146 (1989) ("The evidence before the arbitrator will not be considered."). In general, although the intentions of the parties as expressed in the agreement control, "those intentions are generously construed as to issues of arbitrability." 47 Wn. App. at 684 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985)).

Here, it is undisputed that the arbitration clause of the joint venture agreement contains no exclusion of any sort; in fact it is broad and inclusive, requiring arbitration of "[a]ny disputes . . . which may arise between or among the joint venturers in connection with this joint venture and/or to rights of any joint venturers . . .".[10] Absent an express provision excluding a particular type of dispute, "only the most forceful evidence of a purpose to exclude a claim from arbitration can prevail." *Local Union 77, IBEW v. PUD 1*, 40 Wn. App. 61, 65, 696 P.2d 1264 (1985). The court must be able to say "with positive assurance" that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. 40 Wn. App. at 65 (quoting *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960)).

---

[10]Thus, we find unpersuasive ML Park Place's analogy to *Contra Costa Legal Assistance Workers v. Contra Costa Legal Servs. Found.*, 878 F.2d 329, 330 (9th Cir. 1989) (per curiam). In *Contra Costa*, the Ninth Circuit ruled that the union's claim, however characterized, was in fact a challenge to an allegedly improper layoff decision which under the collective bargaining agreement was *expressly* excluded from arbitration. We agree with the Third Circuit's characterization of *Contra Costa* as a case where "the crucial language explicitly described the issue excluded from arbitration." *United Steelworkers v. Lukens Steel Co.*, 969 F.2d 1468, 1476 n.5 (3d Cir. 1992). Agreements such as the one at issue here that require the court "to *assume* that an issue has been excluded from arbitration cannot be said to *expressly exclude* that issue." 969 F.2d at 1476.

ML Park Place argues that it has indeed overcome the presumption with " 'forceful evidence' confirming that the parties intended to exclude from the scope of the Joint Venture Agreement's arbitration provision disputes arising [from] the FLIC Lease." ML Park Place asserts that Hedreen's counterclaim did not arise "in connection with [the] joint venture", but instead arose "from legal duties created by the FLIC Lease", which governs a "separate legal relationship[]".

ML Park Place's contention is meritless. Limiting our review to the materials in the record that are relevant to this inquiry, there is simply no support for the conclusion that Hedreen's claim — *i.e.*, wrongful termination of, or interference with, an alleged oral agreement between himself and MLLIC to extend the FLIC lease — arose from the FLIC lease itself. The record fails to support even an inference that the alleged breach arose from a contractual obligation in an existing lease.[11] The claim either "ar[o]se between or among the joint venturers in connection with th[e] joint venture and/or to rights of any joint venturers", or it did not exist at all. In either case, the arbitration clause in the joint venture agreement evinces no intent to exclude such a claim. Thus, even were it conceivable that the parties intended to exclude from arbitration any dispute between them pertaining in any way to lease relationships, on this record we certainly cannot say "with positive assurance" that the arbitration clause is not susceptible of an interpretation that covers the dispute placed in issue by Hedreen's counterclaim.[12]

---

[11]There is no reference to the FLIC lease anywhere in factual allegations submitted by Hedreen. Hedreen claimed that "MLLIC caused [FLIC] to . . . renege on the commitment to extend its lease in the building" and asserted that MLLIC's actions constituted "a violation of the Joint Venture Agreement and a breach of the fiduciary duty owed to its partner in this venture."

[12]To pursue ML Park Place's argument further would require the court (1) to go beyond the face of the award, which determined only that "MLLIC and MLPC have breached their fiduciary duties under the Joint Venture Agreement to Respondent [Hedreen]", and (2) to review the merits of the arbitration, at which Hedreen sought to prove the existence and context of an alleged oral lease extension agreement. This would clearly be beyond the "very narrow" scope of review

■ Thus, we conclude that the trial court appropriately heeded the admonition of this court in *Botting* that an arbitration award shall not be vacated if the appellant's argument cannot be decided without "delving into the substantive merits of the claims". 47 Wn. App. at 684. As did the trial court, we refuse to exceed the limited scope of review permissible on a motion to vacate an award, and we conclude that ML Park Place has failed to overcome "[t]he inexorable presumption in favor of arbitration". *Botting*, 47 Wn. App. at 685.

The trial court did not err in denying ML Park Place's motion to vacate, modify, or correct the arbitration award, and the judgment confirming the award is affirmed.

## III
### MOTION TO VACATE JUDGMENT

ML Park Place's second appeal arises from the trial court's denial of its CR 60(b) motion to vacate the judgment confirming the arbitration award. The trial court ruled that (1) the motion was untimely and (2) ML Park Place had not established a sufficient factual basis to vacate the judgment confirming the arbitration award.

ML Park Place first challenges the trial court's threshold determination that the motion to vacate was untimely under the 90-day limit in RCW 7.04.180.

The Washington arbitration act provides that notice of a motion to vacate, modify or correct an arbitration award "shall be served . . . within three months after a copy of the award is delivered". RCW 7.04.180. It is undisputed that the motion here in dispute was not served within the 3-month statutory limit.

ML Park Place argues, however, that this provision only applies to motions to vacate the arbitration *award* itself, and does not limit a party's right to vacate the *judgment* confirming that award, which ordinarily "has the same force

permissible under RCW 7.04. *Barnett v. Hicks*, 119 Wn.2d at 157; *see also Hatch v. Cole*, 128 Wash. 107, 109, 113, 222 P. 463, *adhered to on rehearing*, 130 Wash. 706, 226 P. 1119 (1924).

and effect, in all respects as, and is subject to all the provisions of law relating to, a judgment in an action". RCW 7.04.210. According to ML Park Place, the plain language of section .210 clearly differentiates between awards and judgments and, thus, its motion was timely under the provisions of CR 60, which pertain to motions for relief from judgment.

While we do not wholly accept Hedreen's argument in response that CR 81[13] completely removes a judgment confirming an arbitration award from the operation of CR 60, we agree with the trial court that ML Park Place's motion was misguided under the circumstances.

Once again, federal authority provides a helpful framework for resolving this issue of first impression.[14] In *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334 (9th Cir. 1986), the appellant's motion to vacate an arbitration award was denied. A year after the award was filed, appellant sought to set aside the judgment confirming it on the grounds of newly discovered evidence, fraud in the arbitration proceedings, and Fed. R. Civ. P. 60(b)(6) ("any other reason justifying relief").

First, the Court of Appeals examined appellant's claim that the judgment had been obtained by fraud, misrepresentation or misconduct. The court disposed of this argument summarily, explaining that appellant "failed to identify any fraud, misrepresentation or misconduct *in the court proceedings*. Fraud alleged *in the arbitration* does not render *the judgment* fraudulently obtained." (Italics ours.) 791 F.2d at 1338.[15]

---

[13]CR 81 provides that the civil rules govern all civil proceedings except where application of the rules is "inconsistent with rules or statutes applicable to special proceedings". CR 81. The arbitration act is in fact a special proceeding under RCW Title 7, which governs "Special Proceedings and Actions". Hedreen argues that the vacation of judgment procedure under the rules is inconsistent with the statutory limitations on the court's power to vacate an award.

[14]In language virtually identical to that of the Washington arbitration act, the federal arbitration act provides that notice of a motion to vacate, modify, or correct an arbitration award must be served "within three months after the award is filed or delivered." 9 U.S.C. § 12.

[15]Without discussion, the court found no "extraordinary circumstances" to justify setting aside the judgment under Fed. R. Civ. P. 60(b)(6). 791 F.2d at 1338.

Next, the Court of Appeals refused to permit appellant "to revive the motion to vacate by way of a Rule 60(b) motion with a claim of newly discovered evidence [of fraud]". 791 F.2d at 1338. The *Lafarge* court reasoned that the 3-month limitation in the federal arbitration act would be "meaningless" if a party to the arbitration proceeding could independently move to vacate outside of the statutory time period. Accordingly, the court held that not only was a direct attack on the award foreclosed, but also that appellant could not "now collaterally attack the award under the guise of a motion to set aside the judgment confirming the award." 791 F.2d at 1339; *accord, Corey v. New York Stock Exch.*, 691 F.2d 1205, 1211-13 (6th Cir. 1982) ("federal Arbitration Act provides the exclusive remedy for challenging acts that taint an arbitration award").

■ We agree with the Ninth Circuit's approach, for it harmonizes the vacation provisions of the arbitration act with the relief from judgment provisions of CR 60. Under this approach, a CR 60 motion to set aside a judgment confirming an arbitration award can only be brought on the grounds of a defect inherent in the judgment itself or in the means (*i.e.*, "the court proceedings") by which it was obtained. In contrast, the sole avenue for attacks on the *award* itself owing to defects in its procurement is a section .180 motion to vacate an award. CR 60 cannot be used as an alternative route (*i.e.*, "a guise") to attack the award outside of the 3-month statutory limitations period.

In this case, there is no question but that the sole purpose of ML Park Place's CR 60 motion was to permit a direct attack on the arbitration award. Nothing in the record or the briefs on appeal identifies an inherent defect in the judgment or an irregularity in the means by which it was procured. In fact ML Park Place argued to the trial court that it sought to vacate the judgment confirming the award "so that we may present the motion to vacate the arbitration award on the additional ground that newly discovered evidence indicates that the arbitration was procured through undue means." Just as in *Lafarge*, ML Park Place sought to attack

the award "under the guise of a motion to set aside the judgment confirming the award."

As did the Ninth Circuit, we reject the use of CR 60 in these circumstances. We are unimpressed with ML Park Place's prediction that foreclosing use of CR 60 "could make the courts impotent accessories to fraud" in cases where evidence of the fraud only comes to light after the 3-month time limit of RCW 7.04.180 has expired. It would be far more violative of arbitration principles to accept ML Park Place's position, which would subject arbitration awards to substantive and procedural challenges that the parties bargained out of when they agreed to the more flexible and informal process of arbitration. This would thwart the policy of RCW 7.04 to foster arbitration as an efficient and economical alternative to litigation, and it would encourage parties disappointed by an arbitration result to embroil their adversaries in costly and time-consuming postjudgment judicial proceedings.[16]

Moreover, even assuming relief under CR 60(b) is available when evidence of fraud, misrepresentation, or misconduct is newly discovered, ML Park Place has failed to convince us that its motion to vacate on these grounds could not in fact have been brought in a timely fashion as a motion to vacate the award. It is undisputed that (1) ML Park Place had a letter from Hedreen in which Hedreen articulated the identical (and allegedly inconsistent) position taken during the appraisal, and (2) this letter was submitted to the trial court during ML Park Place's initial motion to vacate the award. See footnote 5.[17] Thus, the substance of the evidence

---

[16]*See Westmark Properties*, at 402 ("very purpose of arbitration is to avoid the courts"; it should not "serve as a prelude to litigation"); *Posadas de Puerto Rico Assocs., Inc. v. Asociacion de Empleados de Casino de Puerto Rico*, 648 F. Supp. 879, 883 n.5 (D.P.R. 1986) (90-day limitation period in state and federal arbitration statutes embodies "policy of quickly cutting off the ability of a party to upset an arbitration award"), *aff'd*, 821 F.2d 60 (1st Cir. 1987).

[17]Despite ML Park Place's contrary assertion, it is entirely irrelevant that the evidence was used in support of an argument raising different statutory grounds for vacation of the award; the question here is whether the evidence was "discoverable" at a time when it could have been presented to the trial court.

of Hedreen's alleged "misconduct", *i.e.*, his change in position as to the value of the building, existed and was known to ML Park Place within the 3-month statutory period within which a challenge to the award could have been made. Where evidence of misconduct or undue means is not only discoverable, but discovered and brought to the attention of the court in support of a motion to vacate the award, a party will not be given a second bite at the apple.

ML Park Place contends nonetheless that this was not yet "conclusive evidence" of Hedreen's "formal position in a separate adjudicative proceeding". This position is meritless. Even assuming, and only for purposes of argument, that any formality was required,[18] ML Park Place clearly had enough evidence to request a stay of proceedings on Hedreen's motion to confirm the award in order to develop its "conclusive evidence". *See* RCW 7.04.180 (authorizing a stay of proceedings on a motion to confirm an arbitration award).

In sum, we conclude that ML Park Place's attempt to vacate the judgment constituted an untimely effort to vacate an arbitration award. Accordingly, we affirm the trial court's order denying ML Park Place's motion to vacate the judgment.

Affirmed.

COLEMAN and BAKER, JJ., concur.

Reconsideration denied January 11, 1994.

Review denied at 124 Wn.2d 1005 (1994).

---

[18] *Cf. State v. Harris*, 106 Wn.2d 784, 797, 725 P.2d 975 (1986) (evidence cannot be considered newly discovered when it is not "in fact any different in substance than that which was available to defendant at the time of the trial"), *cert. denied*, 480 U.S. 940 (1987). Here, it is only the forum that changed; the substance of Hedreen's alleged "flip-flop", *i.e.*, his taking the position that the Building was worth as much as $48 million, remained the same from the June 16, 1992, letter onward.