# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LONGWELL ARBORS, LLC, a Washington limited liability company; LONGWELL COMPANY, a Washington limited liability company; and STANLEY XU and NANLING CHEN, husband and wife, individually and the marital community comprised thereof, | No. 71121-1-I |
| | DIVISION ONE |
| Respondents, | UNPUBLISHED OPINION |
| v. | FILED: October 6, 2014 |
| CPI POOL II FUNDING, LLC, a Washington limited liability company, | |
| Appellant. | |

LEACH, J. — CPI Pool II Funding LLC (CPI) appeals the trial court's denial of its motion to compel arbitration in the lawsuit instigated by its former business partner, Longwell Arbors LLC. In CPI's previous litigation against Longwell, the parties executed a CR 2A stipulation in which they agreed to submit to binding arbitration "[t]he Financial Accounting Claims between the parties" and "[a]ny and all disputes" about the interpretation of the CR 2A agreement. Because of the language of the parties' agreement and the strong presumption in favor of arbitration, the trial court should have ordered the parties to arbitrate their competing interpretations of the CR 2A agreement. We reverse and remand.

## FACTS

From about 2006 to 2011, CPI and Longwell Arbors LLC were members of the Arbors at Sunset LLC, the owner of a large residential apartment complex in Renton, Washington. CPI was the only nonmanaging member, holding 80 percent of the outstanding member interests. Longwell Arbors was the managing member of the project, holding the remaining 20 percent interest. Longwell Company was the property management company for the Arbors at Sunset. Stanley Xu and his wife, Nanling Chen, owned and were members of Longwell Arbors and Longwell Company.

On June 1, 2010, CPI filed suit in King County Superior Court (CPI litigation) against Longwell Arbors, Longwell Company, Stanley Xu, and Nanling Chen (collectively Longwell), alleging mismanagement and numerous breaches of the parties' operating agreement. Among CPI's claims were allegations of financial accounting irregularities during Longwell's management of Arbors at Sunset. CPI asserted financial damages claims and sought an accounting as well as the removal of Longwell as managing member.

On August 5, 2011, CPI and Longwell executed a CR 2A stipulation settling some issues and reserving others for arbitration. The CR 2A agreement confirmed CPI's replacement of Longwell as managing member. It provided that Longwell would retain certain consent rights and its 20 percent interest as a

nonmanaging member. The agreement further provided, "The Financial Accounting Claims between the parties shall be submitted to binding arbitration before the Hon. Terry Lukens (Ret.) of JAMS [an alternative dispute resolution service] if they cannot be resolved between the parties," specifying, "[c]laims other than Financial Damages Claims are excluded from the Arbitration." It detailed CPI's duties as managing member and its obligations if it decided to solicit offers for the sale of the property. The agreement provided the CPI litigation "shall be dismissed with prejudice without an award of fees or costs to either party." And it concluded, "Any and all disputes concerning the interpretation or construction of this CR 2A Agreement and all disputes concerning the enforcement of this agreement shall be resolved by binding arbitration before the Hon. Terry Lukens (Ret.)."

CPI and Longwell failed to negotiate a resolution of CPI's financial accounting and damages claims and submitted these claims to Judge Lukens for arbitration. On February 29, 2012, Judge Lukens made a final arbitration award to CPI of $317,968.63, which the superior court confirmed on April 2, 2012. In June 2012, Longwell's 20 percent interest was sold at sheriff's sale, extinguishing Longwell's interest in Arbors at Sunset.

On September 19, 2013, Longwell filed suit against CPI in King County Superior Court, claiming financial damages and seeking an accounting as well as

declaratory and injunctive relief from CPI's alleged breaches of contract and fiduciary duty as managing member. CPI moved to compel arbitration. The trial court denied the motion.

CPI appeals.

## STANDARD OF REVIEW

We review de novo a trial court's decision about the arbitrability of a dispute.[1] In interpreting a CR 2A agreement, we apply normal contract principles and also review de novo a trial court's interpretation of contract language.[2]

## ANALYSIS

CPI claims that the superior court should have compelled arbitration because the CR 2A agreement requires that the parties arbitrate "all financial accounting claims arising between them" and therefore that the trial court erred by denying its motion to compel arbitration. Longwell responds, "The limited arbitration agreement negotiated by the parties regarding certain specified claims—arising out of a prior lawsuit—cannot be fairly said to encompass the issues in this litigation."

The uniform arbitration act, chapter 7.04A RCW, vests courts with the power to determine "whether an agreement to arbitrate exists or a controversy is

---

[1] Davis v. Gen. Dynamics Land Syst., 152 Wn. App. 715, 718, 217 P.3d 1191 (2009).

[2] In re Marriage of Pascale, 173 Wn. App. 836, 841, 295 P.3d 805 (2013).

subject to an agreement to arbitrate."[3] A court determines the arbitrability of a dispute by examining the arbitration agreement between the parties.[4] "'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"[5] But if the reviewing court "can fairly say that the parties' arbitration agreement covers the dispute, the inquiry ends because Washington strongly favors arbitration."[6] "Absent an express provision excluding a particular type of dispute, 'only the most forceful evidence of a purpose to exclude a claim from arbitration can prevail.'"[7] In other words, unless the court can say with "positive assurance" that the arbitration provision allows no interpretation covering the asserted dispute, the dispute is arbitrable.[8] And "once a party moves to compel arbitration of a particular dispute and the court determines that the parties have agreed to arbitrate that dispute, the court must order the parties to proceed to arbitration"

---

[3] RCW 7.04A.060(2); Saleemi v. Doctor's Assocs., Inc., 176 Wn.2d 368, 376, 292 P.3d 108 (2013).

[4] Pascale, 173 Wn. App. at 842.

[5] Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 810, 225 P.3d 213 (2009) (internal quotation marks omitted) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)).

[6] Davis, 152 Wn. App. at 718.

[7] ML Park Place Corp. v. Hedreen, 71 Wn. App. 727, 739, 862 P.2d 602 (1993) (quoting Local Union 77, Int'l Bhd. of Elec. Workers v. Pub. Util. Dist. No. 1 of Grays Harbor County, 40 Wn. App. 61, 65, 696 P.2d 1264 (1985)).

[8] ML Park Place, 71 Wn. App. at 739 (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)).

absent grounds for revocation of the contract.[9] Courts apply an "inexorable presumption" in favor of arbitration, and the reviewing court should resolve any doubts about the applicability of an arbitration agreement in favor of arbitrability.[10] Although the question of whether the parties have agreed to arbitrate is a judicial one, the parties may provide otherwise in their agreement.[11] And if the reviewing court concludes that the dispute involves an interpretation of an agreement to arbitrate, determining the proper interpretation is the duty of the arbitrator and not the court.[12]

Here, paragraph four of the CR 2A agreement provides, "The Financial Accounting Claims between the parties shall be submitted to binding arbitration before the Hon. Terry Lukens (Ret.) of JAMS if they cannot be resolved between the parties." Paragraph four continues, "Examples of the Financial Accounting Claims are: problems in the manipulation of capital accounts; improper withdrawals or distributions; improper payments to any of the parties; Longwell loan account claim; the Guaranteed Cost overrun claim; Pool II and Longwell

---

[9] Kamaya Co. v. Am. Prop. Consultants, Ltd., 91 Wn. App. 703, 720, 959 P.2d 1140 (1998).

[10] W.A. Botting Plumbing & Heating Co. v. Constructors-Pamco, 47 Wn. App. 681, 685, 736 P.2d 1100 (1987); Pascale, 173 Wn. App. at 842; Heights at Issaquah Ridge Owners Ass'n v. Burton Landscape Grp., Inc., 148 Wn. App. 400, 405, 200 P.3d 254 (2009).

[11] See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); Townsend v. Quadrant Corp., 153 Wn. App. 870, 879, 224 P.3d 818 (2009); Botting, 47 Wn. App. at 683.

[12] Meat Cutters Local No. 494 v. Rosauer's Super Mkts., Inc., 29 Wn. App. 150, 154, 627 P.2d 1330 (1981).

Arbors capital account balances and alleged improper withdrawals." The agreement explicitly excludes from arbitration only "[c]laims other than Financial Damages Claims."

In its order denying CPI's motion to compel arbitration, the trial court explained, "The CR 2A agreement . . . did not refer 'all' Financial Accounting Claims to arbitration; it only referred '<u>the</u>' Financial Accounting Claims between the parties in that lawsuit. It, on its face, does not cover the plaintiffs' claims in <u>this</u> lawsuit."

In support of the trial court's decision, Longwell asserts that

the parties did not agree to resolve all claims arising out of the Operating Agreement by arbitration. Nor did they even agree to resolve all financial claims by arbitration. Instead, they only agreed to resolve certain claims, raised in the CPI Litigation and expressly identified in the CR 2A Agreement."

Like the trial court, Longwell focuses on the somewhat ambiguous language of paragraph four. Although the word "the" implies specificity, the phrase "[t]he Financial Accounting Claims between the parties" is susceptible to more than one reasonable interpretation. It could mean the existing claims of the CPI litigation. But it does not expressly exclude other financial accounting claims between these parties that may arise at other times or in other contexts. Moreover, the use of examples instead of an all-inclusive list appears to widen the provision's scope, especially when certain examples include broader phrases such as "improper payments to any of the parties."

Most importantly, neither the trial court's order nor Longwell's argument squarely addresses paragraph eight, the final provision of the agreement. In this paragraph, the parties agreed, "Any and all disputes concerning the interpretation or construction of this CR 2A Agreement and all disputes concerning the enforcement of this agreement shall be resolved by binding arbitration before the Hon. Terry Lukens (Ret.)." The interpretation and construction of the CR 2A agreement depends on the meaning of the phrase, "[t]he Financial Accounting Claims between the parties." Many of Longwell's 2013 claims against CPI are similar to CPI's 2010 claims, including financial damages claims for breaches of contract and fiduciary duty.

The only disputes that the CR 2A agreement explicitly excludes from arbitration are "[c]laims other than Financial Damages Claims." Especially when considered with paragraph four's language reasonably permitting a more expansive interpretation, this is not "forceful evidence of a purpose to exclude" from arbitration all financial damages claims except those asserted by CPI in the 2010 litigation. To the contrary, paragraph eight requires arbitration of "[a]ny and all disputes" concerning the interpretation, construction, or enforcement of the CR 2A agreement. Because this case involves exactly this type of dispute, we "can fairly say that the parties' arbitration agreement covers the dispute."[13] Given

---

[13] Davis, 152 Wn. App. at 718.

the presumption in favor of arbitration, our inquiry ends. We hold that the trial court erred in denying CPI's motion to compel arbitration.

## CONCLUSION

Because the parties agreed in their CR 2A agreement to arbitrate "[a]ny and all" disputes about its interpretation and we can fairly say that the current dispute concerns the interpretation of the CR 2A agreement, the trial court erred by denying CPI's motion to compel arbitration. We reverse and remand for further proceedings consistent with this opinion.

_Leach, J._

WE CONCUR:

_Spearman, C.J._              _Schindler, J._