**QUASEM GROUP, LIMITED, Plaintiff,**

v.

**W.D. MASK COTTON COMPANY, Defendant.**

No. 96–3020–M1/V.

United States District Court, W.D. Tennessee, Western Division.

June 11, 1997.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

McCALLA, District Judge.

This matter is before the Court on defendant's motion to dismiss and/or for summary judgment, filed January 6, 1997. Because the parties have submitted and the Court has considered materials outside the pleadings, the Court will treat defendant's motion as a motion for summary judgment. Fed. R.Civ.P. 12(b), 56. For the reasons set forth below, defendant's motion is GRANTED.

### BACKGROUND

The dispute in this case arises out of a series of contracts to supply cotton entered into by the parties. Plaintiff, Quasem Group, Ltd. ("Quasem"), located in Bangladesh, agreed to purchase cotton from defendant, W.D. Mask Cotton Company ("Mask"), a Tennessee corporation engaged in the business of exporting American raw cotton.

On December 1, 1991, Quasem Cotton Mills, Ltd., an alleged affiliate of plaintiff Quasem, entered into a contract to purchase approximately 10,000 bales of raw cotton from defendant Mask. This contract was assigned serial number T1119. *Compl.* at Exh. A. On or about December 19, 1991, Quasem entered into a second contract with Mask for the purchase of approximately 10,000 bales of raw cotton to be shipped in equal amounts from March 1992 through July 1992. This contract was assigned serial number T1121. *Compl.* at Exh. B. On July 7, 1992, Quasem Rotor Spinning Mills, Ltd., an affiliate of Quasem, entered into a contract with Mask to purchase approximately 6000 bales of raw cotton for shipment in equal amounts in August 1992 and September 1992. This con-tract was assigned serial number T1156. *Def.'s Mem. in Supp. of Mot. to Dismiss* at Exh. 1.

Each of the contracts between Mask and Quasem, or its affiliates, provides as follows:

> If amicable settlement of quality difference is impossible, arbitration for quality to be governed by Liverpool Cotton Association, Ltd., Liverpool.

> Any irreconcilable differences concerning contract terms, validity or alleged default to be referred to technical arbitration by Liverpool Cotton Association, Ltd., Liverpool.

The Liverpool Cotton Association, Ltd. ("LCA"), is an international association composed of cotton merchants, textile mills, and other businesses affiliated with the cotton industry with members in approximately 58 countries. The LCA has promulgated comprehensive trade rules governing international commercial transactions in cotton and governing the arbitration of disputes which may arise out of such transactions. At all times relevant to this proceeding, Mask was a member of the LCA.

By-law 6 of the LCA provides:

> (1) Every contract which shall be made subject to the by-laws and/or Rules of Association, or subject to Liverpool or Arbitration, or contains words to a similar effect, shall be deemed to provide as one of the terms thereof that any differences arising between the parties thereto, touching or arising out of such contracts shall be referred to arbitration in accordance with the by-laws and Rules, and that the holding of such an arbitration and the obtaining of an award thereunder shall be a condition precedent to the right of any party to such contract to commence legal proceedings against the other party in respect of any such difference as aforesaid, and that neither party under such contract shall have any right of action against the other touching or arising out of such contract, except to enforce the award in any such arbitration.

Rule 212 of the LCA provides:

Unless otherwise mutually agreed to by the buyer and seller, or an extension has been granted in accordance with the provisions of Rule 214 on cotton shipped to: . . .

(b) Any place other than the United Kingdom, application for Arbitration on Quality shall be made within fifty days and samples must be dispatched or consigned for dispatch within seventy days from the Date of Arrival and the Arbitration shall commence within eight months of Date of Arrival.

Rule 103 of the LCA provides:

(1) Sampling shall, unless otherwise agreed between the buyer and the seller, take place within forty days of the Date of Arrival at the agreed point of delivery, in the presence and under the control of their representatives. The name of the seller's representative for this purpose shall be given to the buyer on or before the tendering of an invoice.

(2) Samples for arbitration shall be jointly sealed.

(3) In exceptional circumstances, application may be made to Standing Committee A, in accordance with by-law 110A, for an extension of the time limit stated in this rule.

Apparently, the relationship between the parties deteriorated, and, on July 30, 1993, Quasem filed a civil action in this Court, Civ. No. 93–2668–M1/A, seeking to recover damages from Mask for breach of contract and breach of an alleged settlement arising out of Mask's shipment of cotton alleged by Quasem to be of an inferior quality than that required under the contracts. The complaint alleged various legal theories, including fraud, misrepresentation, breach of contract, and fraud in the inducement.

In response to Quasem's complaint, Mask filed a motion to dismiss, asserting lack of subject matter jurisdiction and failure to state a claim. In essence, Mask asserted that Quasem's sole remedy under the contract was arbitration before the LCA and that Quasem had permitted the time limits for instituting arbitration to expire.

On October 31, 1994, this Court entered an order granting Mask's motion to dismiss for lack of subject matter jurisdiction. The Court found that the contract contained an arbitration clause that was enforceable pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitrable Awards, 9 U.S.C. §§ 201–208 (1970).[1] Specifically, the Court found that the claims raised by Quasem were arbitrable under the contract and that Quasem had failed to plead sufficient facts to demonstrate fraud in the inducement. The Court concluded that it lacked subject matter jurisdiction and referred the parties to arbitration. In addition, the Court specifically declined to address the issue of whether any arbitration claim was barred as a result of Quasem's non-compliance with LCA Rules, finding that such a claim would more properly be brought before the LCA.

On August 8, 1995, Quasem filed an application with Standing Committee A of the LCA for an extension of time for the holding of a quality arbitration along with its Points of Claim. The LCA invited Mask to respond to Quasem's request that it be allowed to assert a quality arbitration over three years after the time for instituting an arbitration claim had expired under the terms of the contract. Mask filed an objection.

On November 7, 1995, Standing Committee A of the LCA denied Quasem's request for an extension of time to hold a quality arbitration because the Committee was "unable to find that unavoidable delay arising from special circumstances had occurred. which prevented the buyers (Quasem) from complying with the time limits stipulated." *Compl.* at Exh. 8. In short, the LCA deter-

---

1. This Convention, along with the Federal Arbitration Act ("FAA"), codified at 9 U.S.C. §§ 1–14, provides for the judicial enforcement of "privately made agreements to arbitrate." *Dean Witter Reynolds. Inc. v. Byrd,* 470 U.S. 213, 219, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985). The legislative history of the Act reveals that Congress intended to place arbitration agreements upon the same footing as other contracts. *Id.* at 220, 105 S.Ct. at 1242. The adoption of the Convention in 1970 expanded the Act into the field of international commerce, providing for the enforcement of arbitration clauses in commercial transactions in countries that are parties to the Convention. 9 U.S.C. § 202.

mined that Quasem's claim was barred by its Rules due to Quasem's failure to timely initiate a quality arbitration proceeding.

On September 18, 1996, Quasem filed the instant action, seeking to recover damages arising out of Mask's shipment of cotton under the same contracts that formed the basis of the first action and for breach of an alleged settlement agreement as set forth in the first action. Once again, Quasem alleges various legal theories, including breach of contract, intentional misrepresentation, promissory fraud, and fraud in the inducement to recover damages arising out of the alleged shipment of inferior cotton under the contracts. Quasem also seeks specific performance of the alleged settlement between the parties. On November 5, 1996, defendant filed a motion to dismiss for failure to state a claim. On December 23, 1996, plaintiff filed an amended complaint. On January 6, 1997, defendant filed a motion to dismiss and/or for summary judgment with respect to the amended complaint. On February 7, 1997, plaintiff filed a response, in the form of a response to an Order to Show Cause. Finally, on March 14, 1997, defendant filed a supplemental response.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Pursuant to Rule 56(e), when confronted with a properly supported motion for summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." A genuine issue of material fact exists "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106

S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. In considering a motion for summary judgment, however, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986).

## DISCUSSION

Although the parties have not directly addressed the issue, this case presents a simple and straightforward question: What is the role of a court under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitrable Awards ("Convention"), codified at 9 U.S.C. §§ 201–208 (1970), when a party seeks to enforce an arbitral award or where a party seeks to use the arbitral decision as a defense in an action brought by another party. A review of the Convention and codifying statute reveals that the role of the court is well defined.

Pursuant to 9 U.S.C. § 207, a "court shall confirm the award unless it finds one of the grounds for refusal or deferral or recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Article V of the Convention provides:

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

(a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any invalidation thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the indication thereon, under the law of the country where the award was made; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contain decision on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

■ In this case, plaintiff makes two arguments against enforcement of the arbitrator's decision. First, plaintiff argues that no arbitration on the merits was undertaken and, therefore, arbitration failed to provide it with a forum for relief. Contrary to plaintiff's position, however, a decision not to hear a claim on the basis that the claim is time barred is, in itself, a decision of the arbitrator and, therefore, subject to the provisions of the Convention. If the Court were to accept plaintiff's argument, a claimant could avoid an arbitration agreement merely by waiting until the time for arbitration, under the relevant rules, expired.[2] Because the rule argued by plaintiff would eviscerate the underlying purpose and rationale of the Convention, plaintiff's argument is unavailing.[3]

■ Alternatively, plaintiff seeks to avoid enforcement and recognition of the LCA's decision on the grounds that the arbitration agreement is void or otherwise unenforceable. In response, defendant argues that the enforceability of the arbitration agreement has already been decided by the Court in the previous action, and, therefore, plaintiff is barred by res judicata from relitigating the issue. According to plaintiff, however, the previous action was dismissed without prejudice on the grounds that this court lacked subject matter jurisdiction, and, therefore, the principles of res judicata do not bar this subsequent action.

In general, res judicata prohibits the relitigation of the same claim by the same party if the previous action ended with a valid judgment on the merits. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have

2. Moreover, contrary to plaintiff's position, plaintiff has not been deprived of a forum in which to present its claim; instead, plaintiff entered into a contract in which it chose the forum in which it would pursue its claim. That plaintiff now regrets that decision does not allow this Court to hear plaintiff's claim and thereby rewrite the contract in which plaintiff entered.

3. In reaching this conclusion, the Court does not mean to imply that it agrees with the position urged by the defendant. According to defendant, when a contract requires that the parties resolve their dispute through arbitration and an aggrieved party fails to institute arbitration within the time set forth under the applicable rules, the aggrieved party has waived their exclusive reme-

dy and no additional remedy may be sought at law. *Def.'s Mem. in Supp. of Mot. to Dismiss* at 9 (citing *Reynolds Jamaica Mines, Ltd. v. La Societe Navale Caennaise*, 239 F.2d 689 (4th Cir.1956); *Nissho Iwai Amer. Corp. v. M/V Sea Bridge*, 1991 WL 182117 (D.Md.1991)). Defendant's argument however, is overly restrictive. It is well settled that a court may hear a dispute despite the presence of an arbitral agreement if the court determines that the arbitral agreement is "null and void," inoperative, or incapable of being performed. Convention, Article II(3). Defendant's position, however, would preclude the Court from hearing such an argument, a position clearly contrary to the express language of the Convention.

been raised in that action."). In order for res judicata to apply, therefore, three elements must be present: (1) a judgment on the merits in an earlier action; (2) identity of the parties or their privies in the two suits; and (3) identity of the cause of action or claims between both suits. *Blonder–Tongue Lab. v. University of Ill. Found.*, 402 U.S. 313, 323–24, 91 S.Ct. 1434, 1439–40, 28 L.Ed.2d 788 (1971); *Brzostowski v. Laidlaw Waste Sys. Inc.*, 49 F.3d 337, 338 (7th Cir. 1995); *Wade v. Hopper*, 993 F.2d 1246, 1252 (7th Cir.1993).

Although plaintiff is correct that a dismissal under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction permits the repleading of the action to bring it within a court's subject matter jurisdiction, *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990), and that the only res judicata effect of such a dismissal is limited to the question of jurisdiction, *Shockley v. Jones*, 823 F.2d 1068, 1073 (7th Cir.1987), a necessary finding by this Court in reaching its conclusion that the Court lacked subject matter jurisdiction was that the arbitration clause was not null and void, inoperative, or otherwise incapable of being performed. A short review of this Court's October 31, 1994 Order is instructive in this regard.

In that Order, the Court first identified four questions governing the enforceability of arbitration clauses found in international commercial agreements:

1) Is there an agreement in writing to arbitrate the subject of the dispute? Convention, Articles II(1), II(2).

2) Does the agreement provide for arbitration in the territory of a signatory country? Convention, Articles I(1), I(3); 9 U.S.C. § 206; Declaration of the United States upon accession, reprinted at 9 U.S.C.A. § 201, Note 43 (1990 Supp.).

3) Does the agreement arise out of a legal relationship, whether contractual or not

which is considered as commercial? Convention, Article I(3); 9 U.S.C. § 202.

4) Is a party to the contract not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states? 9 U.S.C. § 202.

*Quasem Group, Ltd. v. W.D. Mask Cotton Co.*, Civ. No. 93–2668–M1/A, slip op. at 4 (October 31, 1994) (quoting *Tennessee Imports, Inc. v. Filippi*, 745 F.Supp. 1314 (M.D.Tenn.1990)). The Court then noted that if it answers these four question affirmatively, it must enforce the arbitral agreement "unless it finds the agreement null and void,' inoperative or incapable of being performed. Convention, Article II(3)." *Id.* (quoting *Tennessee Imports*, 745 F.Supp. at 1322).

After considering each of the above factors, the Court specifically found that the arbitration agreement was enforceable; accordingly, the Court referred the parties to arbitration. In so doing, the Court specifically noted that the agreement was not null and void, inoperative, or incapable of being performed: "Further, plaintiff has not set out facts amounting to fraud in the inducement of the arbitration clause or any claim of fraud which goes to the making of the agreement to arbitrate." *Id.* at 6 (quoting *C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 912 F.2d 1563, 1567 (6th Cir.1990)).

Accordingly, contrary to plaintiff's assertions, not only was the validity of the arbitration agreement raised in the previous action,[4] but the resolution of that issue was necessary to the Court's finding that it lacked subject matter jurisdiction over plaintiff's claim. Consequently, by plaintiff's own rationale, that issue is now res judicata between these parties.[5]

Consequently, the Court finds that plaintiff is unable to pursue this action in this Court. Under the Convention, this Court must en-

---

**4.** In fact, as defendant correctly notes, this Court gave plaintiff every opportunity to assert and prove that the arbitration agreement was induced by fraud or was otherwise inoperable. Only after plaintiff made no such showing did the Court refer that case to arbitration.

**5.** In reaching this conclusion, the Court expressly declines to reach the issue of whether res judicata would also bar a party from challenging the validity of the arbitration agreement if the issue was not raised by the parties when the matter was first before the Court and before the case was referred to arbitration.

force and recognize an arbitral decision unless it finds that one of the grounds listed in Article V of the Convention is applicable. Because the one ground set forth by plaintiff in support of its position was decided against plaintiff in the previous action, the Court must enforce the arbitral decision. In this case, the arbitrator found that plaintiff was barred by the applicable rules from pursuing its claims. Practically speaking, therefore, the arbitrator found in favor of defendant. Accordingly, defendant's motion to dismiss and/or for summary judgment is GRANTED, and this case is DISMISSED WITH PREJUDICE.

As a final matter, the Court notes that part of the confusion in this case results from the inappropriate terminology employed by the parties and the Court in the first action. In discussing the proper method of referral to arbitration in the October 31, 1994 Order, the Court noted the controversy among the courts. For example, courts in the First and Second Circuits adhere to the view that the appropriate remedy under the Convention is dismissal of the complaint for lack of subject matter jurisdiction. *E.g., Siderius, Inc. v. Compania de Acero del Pacifico,* 453 F.Supp. 22 (S.D.N.Y. 1978); *Ledee v. Ceramiche Ragno,* 684 F.2d 184 (1st Cir.1982). In *Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazioni v. Lauro,* 712 F.2d 50 (3d Cir.1983), however, the Third Circuit affirmed the district court's holding that entering a stay pending arbitration was the proper method of referral under the Convention. To further complicate matters, in *Tennessee Imports,* Judge Nixon, after discussing the issue at length, concluded that either method of referral was appropriate. 745 F.Supp. at 1324.

A review of each of these cases and, more importantly, the statute itself, however, shows that the Court is not faced with a jurisdictional question. Indeed, unlike the FAA, which, "standing alone, does not provide a basis of federal jurisdiction," *Westmoreland Capital Corp. v. Fundlay,* 100 F.3d 263, 267 (2d Cir.1996); *accord Ford v. Hamilton Invest., Inc.,* 29 F.3d 255, 257 (6th Cir.1994), the enabling legislation of the Con-

vention, 9 U.S.C. § 203, confers federal question jurisdiction on proceedings brought under the Convention, irrespective of the amount in controversy. Moreover, if the court were forced to dismiss for lack of subject matter jurisdiction as a result of the arbitration clause, the court would not have the authority to refer the parties to arbitration, a result that would be clearly contrary to the express provisions of the Act. *See* 9 U.S.C. § 206; *Filanto v. Chilewich Int'l Corp.,* 789 F.Supp. 1229, 1241 ("This is facially absurd because the enabling legislation gives the district court the power at least to compel arbitration. How could even this limited power be exercised without subject matter jurisdiction?"). Viewed in this light, the issue before the Court becomes a plain and simple contract issue, and the only decision facing the court is whether it must enforce the contractual provision to arbitrate. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 220, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985) (noting that the legislative history of the Act reveals that Congress intended to place arbitration agreements upon the same footing as other contracts).

In sum, the Court finds that a more appropriate view of such cases is that the court is enforcing the contract, and not that it lacks subject matter jurisdiction over the dispute. In this respect, the decision of whether to dismiss the entire action or enter a stay pending the resolution of arbitration would turn on the scope of the issues before the court that are governed by the arbitration agreement. For example, if all of the issues in dispute are governed by the arbitration agreement, then it would generally be an inefficient use of the court's docket to enter a stay, when the arbitration will likely be dispositive of all the issues. *But see Tennessee Imports,* 745 F.Supp. at 1325 ("Nevertheless, in certain cases, a stay may be a more appropriate solution. Should, for instance, the court deem preliminary injunctive relief necessary to ensure that the arbitration process remains a meaningful one ... a stay would preserve the court's authority to order such relief without unduly interfering in the arbitration of the underlying claims."). On the contrary, if only a small part of the dispute before the court is governed by the arbitra-

tion agreement, then the court should likely enter a stay pending the outcome of arbitration. This decision, of course, should be left to the sound discretion of the district court in its power to manage its docket.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss and/or for summary judgment is GRANTED. A separate order will follow with respect to defendant's pending motion for sanctions.