[No. 40801-1-I. Division One. July 27, 1998.]

KAMAYA CO., LTD., ET AL., *Appellants*, v. AMERICAN PROPERTY CONSULTANTS, LTD., ET AL., *Respondents*.

---

*Howard M. Goodfriend* of *Edwards, Sieh, Smith & Goodfriend, P.S.* (*F. Frederick Fouad*, of counsel), for appellants.

*Michael H. Himes* and *Douglas W. Greene* of *Perkins Coie;*

and *Jay H. Zulauf* and *John H. Chun* of *Mundt, MacGregor, Happel, Falconer, Zulauf & Hall*, for respondents.

KENNEDY, C.J. — Plaintiffs—a group of passive investors in a Japanese real estate partnership—appeal the trial court's order compelling them to arbitrate their fraud-in-the-inducement of the partnership agreement claims with American Property Consultants, Ltd., and its officers and directors (the APC Defendants). Plaintiffs contend that their fraud-in-the-inducement claims are not arbitrable under the partnership agreement's arbitration clause because the partnership agreement contains a Japanese choice-of-law provision. And—according to Plaintiffs—under Japanese law, general arbitration clauses do not cover fraud-in-the-inducement claims. Alternatively, Plaintiffs contend that if their fraud-in-the-inducement claims are arbitrable, the trial court erred in not compelling arbitration between them and all of the defendants, including Grancorp, Inc., and its officers and directors (the Grancorp Defendants).

Even assuming that general arbitration clauses do not cover fraud-in-the-inducement claims under Japanese law, a general choice-of-law provision is not an effective means by which to unequivocally exclude an otherwise arbitrable dispute from arbitration. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 59-60, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995). Therefore, the trial court properly ordered Plaintiffs to arbitrate their fraud-in-the-inducement claims with the APC Defendants.

But the Grancorp Defendants—by filing their Memorandum in Support of the APC Defendants' Motion to Compel

Arbitration—in effect joined in the APC Defendants' Motion to Compel Arbitration. And once a party moves to compel arbitration of a particular dispute and the court determines that the parties have agreed to arbitrate that dispute, the court *must* order the parties to proceed with arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-18, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985). Therefore, the trial court abused its discretion by not compelling arbitration between Plaintiffs and the Grancorp Defendants. Accordingly, we affirm in part, reverse in part, and remand with instructions to compel immediate arbitration between Plaintiffs and both the APC Defendants and the Grancorp Defendants, in Tokyo, Japan.

## FACTS

The APC Defendants and the Grancorp Defendants, among others, formed Inter Co-op No. 2 (IC-2)—a Japanese partnership (or *kumiai*)—to purchase, own, and operate a parcel of Seattle real estate. Kamaya Co., Ltd, Pacific Business Investment, Inc., FT Limited Co., Hisayoshi Yazaki, Kazuo Ito, Kimiko Ito, and Tomoyuki Katayama (Plaintiffs)—a mostly Japanese group of passive investors—purchased shares in IC-2. Each investor executed a real estate purchase and sale agreement (in English), a special power-of-attorney (in English), and a partnership agreement (in Japanese). The partnership agreement contains an internal dispute resolution provision—which includes a mandatory arbitration clause—and a general Japanese choice-of-law provision covering essentially the entire agreement.

After a dispute arose concerning the partnership, the passive investors filed suit against the APC Defendants and the Grancorp Defendants, among others, alleging various violations of the Securities Act of Washington, RCW 21.20, including fraud-in-the-inducement of the partnership agreement as a whole. In response, the APC Defendants filed a Memorandum and Motion to Compel Arbitration requesting the trial court to stay the proceedings and

refer Plaintiffs' claims to mediation and arbitration in Japan. The Grancorp Defendants then filed a Memorandum in Support of the APC Defendants' Motion to Compel Arbitration. The trial court granted the APC Defendants' motion, staying the proceedings against all of the defendants but compelling arbitration only between Plaintiffs and the APC Defendants.

Plaintiffs appeal.

## DISCUSSION
### I. Arbitrability of Plaintiffs' Fraud-in-the-Inducement Claims

Plaintiffs contend that Japanese law governs the arbitrability of their fraud-in-the-inducement of the partnership agreement claims, because the partnership agreement contains a general Japanese choice-of-law provision. The APC Defendants, on the other hand, contend that the Federal Arbitration Act, 9 U.S.C.A. §§ 1-307 (West 1970 & Supp. 1998) (FAA), governs the arbitrability of Plaintiffs' fraud-in-the-inducement claims, notwithstanding the agreement's Japanese choice-of-law provision, because the partnership agreement is a contract affecting commerce. *See* 9 U.S.C.A. § 2. We reject both of these "all-or-nothing" approaches to resolving the issue of which law governs the arbitrability of Plaintiffs' fraud-in-the-inducement claims. Although the FAA governs whether the parties agreed to arbitrate a particular contractual dispute, the contract's choice-of-law provision is a pertinent factor that courts must consider in applying the FAA.

### A. Applicability of the Federal Arbitration Act

■■ In 1925, Congress enacted Chapter 1 of the FAA to abolish "the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24,

111 S. Ct. 1647, 1651, 114 L. Ed. 2d 26 (1991). Chapter 1 of the FAA applies in both state and federal courts, and covers all contracts within Congress's power to regulate under the Commerce Clause. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272, 277, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995); *see also* 9 U.S.C.A. § 2.

▇▇▇▇ In 1970, Congress enacted Chapter 2 of the FAA, which ratified the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *See* 9 U.S.C.A. §§ 201-08. Chapter 2 expanded the FAA's coverage "into the field of international commerce, providing for the enforcement of arbitration clauses in commercial transactions in countries that are parties to the Convention." *Quasem Group, Ltd. v. W.D. Mask Cotton Co.*, 967 F. Supp. 288, 290 n.1 (W.D. Tenn. 1997) (citing 9 U.S.C.A. § 202). "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974).

Chapter 2 mandates that both state and federal courts of the United States enforce the Convention. *See* 9 U.S.C.A. §§ 201, 205. "Article II of the Convention imposes a mandatory duty on the courts of a Contracting State to recognize, and enforce an agreement to arbitrate unless the agreement is 'null and void, inoperative or incapable of being performed.' " *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 959 (10th Cir. 1992) (citing 9 U.S.C.A. § 201 note). All actions and proceedings falling under the Convention are "deemed to arise under the laws and treaties of the United States." 9 U.S.C.A. § 203. But Chapter 1 of the FAA applies to cases brought under Chapter 2 only to the extent that Chapter 1 "is not in conflict with [Chapter 2] or the Convention as ratified by the United States." 9 U.S.C.A. § 208.

Plaintiffs do not dispute that the IC-2 partnership agreement—which was marketed and promoted in Japan to elicit investors in Seattle real estate—is a commercial transaction affecting international commerce. And all possibly interested nations—the United States, Japan, and Sweden[1]—are Contracting States to the Convention. *See* 9 U.S.C.A. § 201. Therefore, Chapter 2 of the FAA and the Convention—and Chapter 1 of the FAA to the extent it does not conflict—govern the arbitrability of Plaintiffs' fraud-in-the-inducement claims. *See McDermott Int'l, Inc. v. Lloyds Underwriters*, 944 F.2d 1199, 1208 (5th Cir. 1991) ("The parties recognize that this suit concerns an arbitration agreement and is not entirely between United States citizens, so [Chapter 2] governs this case.").

For example, in *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 43 (3d Cir. 1978), the court was asked to decide whether a West German corporation and a Pennsylvania corporation should be required to arbitrate their contractual dispute. The court held, notwithstanding ordinary choice-of-law analysis, that the federal substantive law of arbitrability governed whether the parties agreed to arbitrate their dispute:

> There has been much discussion by the parties concerning the applicability of German law or Pennsylvania law in the resolution of this dispute. It may well be that the question of which law is to be applied will have to be answered in deciding the merits of the underlying controversy. However the case before us presents only the issue of the *arbitrability* of that controversy. When a contract involves "commerce", as this one does, whether a "suit or proceeding is referable to arbitration . . . under an agreement [to arbitrate]" pursuant to the federal Arbitration Act, 9 U.S.C. § 3, or to the Convention on Recognition and Enforcement of Foreign Arbitral Awards, Art. II, ¶ 3 and 9 U.S.C. § 206, is clearly a matter of federal substantive law. Thus, the question of whether, in contracts involving commerce, there is an agreement to arbitrate an issue or dispute upon which suit has been brought is governed by

---

[1]At oral argument, counsel for the Grancorp Defendants indicated to this court that Grancorp, Inc. is controlled by Swedish nationals.

federal law. Concomitantly, questions of interpretation and construction of such arbitration agreements are similarly to be determined by reference to federal law. As the court in *Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209, 1211 (2d Cir. 1972), stated, "[o]nce a dispute is covered by the [federal Arbitration] Act, federal law applies to all questions of [the arbitration agreement's] interpretation, construction, validity, revocability, and enforceability."

It is true that, if the parties agree that certain disputes will be submitted to arbitration and that the law of a particular jurisdiction will govern the resolution of those disputes, federal courts must effectuate that agreement. However, whether a particular dispute is within the class of those disputes governed by the arbitration and choice of law clause is a matter of federal law.

*Id.* at 43 (citations and footnotes omitted) (alterations in original). In other words, the "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. The court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA].' " *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)).

As Plaintiffs correctly point out, whether the FAA or Japanese arbitration law governs the arbitrability of their fraud-in-the-inducement claims is not a question of federal preemption: "The Supremacy [C]lause applies to states and is inapplicable to considerations of federal law versus foreign law." *Al-Kurdi v. United States*, 25 Cl. Ct. 599, 601 n.3 (1992); *cf. Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984) (holding that the FAA preempts contrary *state* arbitration law under the Supremacy Clause). And contractual choice-of-law provisions are ordinarily valid under the FAA. *See generally Ford v. NYL-Care Health Plans, Inc.*, 141 F.3d 243, 248 n.6 (5th Cir.

1998) (rejecting argument that, notwithstanding agreement's choice-of-law provision, "substantive federal law governs the scope of an arbitration clause whenever the agreement involves commerce"). But it is axiomatic that courts must have some law to apply when initially determining whether the parties agreed to arbitrate a particular dispute. The FAA provides courts with this necessary analytical framework. Indeed, Plaintiffs themselves argue that the partnership agreement's Japanese choice-of-law provision evidences the parties' intent to exclude fraud-in-the-inducement claims from arbitration *by citing to FAA cases.* Therefore, we hold that although the FAA does not preempt the partnership agreement's Japanese choice-of-law provision, "whether a particular dispute is within the class of those disputes governed by the arbitration and choice of law clause is a matter of federal law." *Becker,* 585 F.2d at 43.[2]

### B. Application of the Federal Arbitration Act

 Questions of arbitrability, like all questions of law, are reviewed de novo. *First Options, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995); *ACF Property Management, Inc. v. Chaussee,* 69 Wn. App. 913, 919, 850 P.2d 1387 (1993). Courts must consider four guiding principles when determining if two parties agreed to submit a particular dispute to arbitration:

(1) the duty to submit a matter to arbitration arises from the

---

[2]Our holding is consistent with the U.S. Supreme Court's pronouncement on the importance of enforcing foreign choice-of-law provisions in the context of international transactions:

The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts[.] We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts.

*Mitsubishi,* 473 U.S. at 629 (internal quotation marks and citation omitted). That is, our holding requires courts to consider foreign choice-of-law provisions in determining the arbitrability of a particular dispute, and permits an arbitrator or court—absent a conflicts-of-law impediment—to apply the foreign nation's law to the underlying dispute.

contract itself; (2) the question of whether parties have agreed to arbitrate a dispute is a judicial one unless the parties clearly provide otherwise; (3) a court should not determine the underlying merits of a dispute in determining the arbitrability of an issue; and (4) arbitration of disputes is favored by the courts.

*W.A. Botting Plumbing & Heating Co. v. Constructors-Pamco*, 47 Wn. App. 681, 683, 736 P.2d 1100 (1987) (citing *AT&T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986)). "The federal policy favoring arbitration is even stronger in the context of international transactions." *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1063 (2d Cir. 1993).

■■ "In general, although the intentions of the parties as expressed in the agreement control, 'those intentions are generously construed as to issues of arbitrability.' " *ML Park Place Corp. v. Hedreen*, 71 Wn. App. 727, 739, 862 P.2d 602 (1993). In other words, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25. Therefore, a contractual dispute is arbitrable unless it can be said " 'with positive assurance' that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *ML Park*, 71 Wn. App. at 739 (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)).

■ In this case, the IC-2 partnership agreement contains a broad and inclusive internal dispute provision that ultimately requires arbitration of all unresolvable disputes and differences between partners, in Tokyo, Japan:

1. Any question concerning the interpretation of this Partnership Agreement or any dispute or difference in opinions arising from time to time among the partners of this partnership

pertaining to the operation of this partnership or any right or obligation with respect to this partnership shall first be presented to the Board of Directors, and the Board of Directors shall render a decision and notify the partners of the partnership in writing.

2. Any partner of this partnership dissatisfied with such decision by the Board of Directors shall attempt to reach an amicable resolution through mutual consultation with pertinent parties.

3. Any dispute or difference in opinions which is not resolved within 90 days after a decision is rendered by the Board of Directors and notified to pertinent parties may[3] be referred to one arbitrator in Tokyo, Japan, and such arbitration shall definitively resolve such dispute or difference in accordance with the then effective rules of the International Commercial Arbitration Association.

Clerk's Papers at 124. And Plaintiffs do not dispute that under the FAA, general arbitration clauses ordinarily cover claims of fraud-in-the-inducement of a contract as a whole. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967); *but see Berger v. Cantor Fitzgerald Sec.*, 942 F. Supp. 963, 965 (S.D.N.Y. 1996) (questioning the continued vitality of *Prima Paint* after the Court's decision in *First Options*, 514 U.S. 938); *Northcom, Ltd. v. James*, 694 So. 2d 1329, 1332 n.1 (Ala. 1997) (same). Therefore, absent the partnership agreement's Japanese choice-of-law provision, Plaintiffs' fraud-in-the-inducement claims clearly would be arbitrable.

The U.S. Supreme Court has held that because arbitration "is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit[,] [parties] may specify by contract the rules under which that arbitration will be conducted." *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 479, 109

---

[3]Although the agreement employs the Japanese translation of the word "may," the parties agree that the arbitration clause is mandatory if the dispute falls within the purview of the internal dispute resolution provision.

S. Ct. 1248, 103 L. Ed. 2d 488 (1989). "It follows, then, that if the parties may select the rules of arbitration through the use of choice-of-law provisions, so too may they specify the law governing interpretation of the scope of the arbitration clause." *Ford*, 141 F.3d at 248.

Relying on this line of reasoning, Plaintiffs contend that the partnership agreement evidences the parties' intent to exclude fraud-in-the-inducement claims from the agreement's general arbitration clause, because the agreement contains a general Japanese choice-of-law provision:

> Excluding the provisions contained in Article 6 hereof, the partners of this partnership hereby agree that this Partnership Agreement shall take effect under and shall be construed in accordance with Japanese law and that the rights and obligations of the partners of this partnership shall be governed by Japanese law.

Clerk's Papers at 123. And—according to Plaintiffs—under Japanese law, general arbitration clauses do not cover fraud-in-the-inducement claims. Appellants' Br. at 15.

The U.S. Supreme Court, however, rejected a very similar argument in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995). In that case, the contract contained a general arbitration clause and a New York choice-of-law provision that governed "the entire agreement." *Id.* at 58-59. "New York law allows courts but not arbitrators, to award punitive damages." *Id.* at 53. Nonetheless, the arbitrators awarded the Mastrobuonos $400,000 in punitive damages. *Id.* at 54.

On appeal, Shearson Lehman argued that "the [New York] choice-of-law provision in their contract evidence[d] the parties' express agreement that punitive damages should not be awarded in the arbitration of any dispute arising under their contract." *Id.* at 56. But the U.S. Supreme Court interpreted the contract's New York choice-of-law provision as having two reasonable interpretations and not as an "unequivocal exclusion of punitive damages claims" from the contract's general arbitration clause:

> Even if the reference to "the laws of the State of New York" is more than a substitute for ordinary conflict-of-laws analysis and, as respondents urge, includes the caveat, "detached from otherwise-applicable federal law," the provision might not preclude the award of punitive damages because New York allows its courts, though not its arbitrators, to enter such awards. In other words, the provision might include only New York's substantive rights and obligations, and not the State's allocation of power between alternative tribunals.

*Id.* at 59-60 (citation and footnotes omitted). Therefore, the Court concluded that U.S. policy favoring arbitration dictated that the ambiguity created by the choice-of-law provision be resolved in favor of arbitration. *Id.* at 62. Accordingly, the Court affirmed the arbitrators' award of punitive damages. *Id.* at 64.

In *Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 927-28 (6th Cir. 1998), Ferro Corporation and Garrison Industries entered into a manufacturing agreement that contained a standard arbitration clause and a general Ohio choice-of-law provision. When a dispute arose concerning the contract, Garrison filed a demand for arbitration, alleging breach of contract. *Id.* at 931. Ferro claimed as a defense that Garrison fraudulently induced it to enter the contract. *Id.* After various procedural maneuvers by both parties, the United States District Court for the Northern District of Ohio denied Ferro's motion to stay arbitration, but held that "Ohio law governed the issues to be arbitrated, and, that under Ohio law 'fraudulent inducement' is not an arbitrable claim." *Id.* at 931. Accordingly, the District "enjoined the arbitration panel from 'resolving the ultimate question of whether the contract at issue in this case has been fraudulently induced.' " *Id.* at 929.

The arbitrators proceeded to resolve Garrison's breach of contract claim and found Ferro " 'liable to Garrison for an amount to be determined at a subsequent hearing.' " *Id.* at 930. The District Court then held a bench trial on Ferro's fraud-in-the-inducement claims and found that "Garrison had fraudulently induced Ferro to enter the agreement[.]"

*Id.* The arbitration panel proceeded to award damages on Garrison's breach of contract claim, but the trial court subsequently vacated the award. *Id.* at 931. On review, the Sixth Circuit Court of Appeals held that "[u]nder the Supreme Court's interpretation of the FAA, the issue of fraudulent inducement of the entire contract is an issue to be resolved by the arbitration process, in the absence of evidence that the contracting parties intended to withhold the issue from arbitration." *Id.* (citing *Prima Paint*, 388 U.S. at 403). And under the Supreme Court's reasoning in *Mastrobuono*, 514 U.S. 52, the contract's general Ohio choice-of-law provision did not unequivocally exclude Ferro's fraud-in-the-inducement claims from the contract's standard arbitration clause. *Ferro* at 937. In other words, the court reasoned that "if Ferro had intended to either exclude the issue of fraudulent inducement from arbitration, or only allow for arbitration to the extent allowed under Ohio law, it could have written this proviso into the [arbitration] clause." *Id.* at 938. Therefore, the Court of Appeals reversed the District Court and ordered the parties to arbitrate Ferro's fraud-in-the-inducement claims. *Id.* at 939.

Likewise, the IC-2 partnership agreement's general Japanese choice-of-law provision neither unequivocally excludes fraud-in-the-inducement claims from its general arbitration provision nor unequivocally invokes Japanese arbitration law. That is, the Japanese choice-of-law provision can reasonably be read as merely specifying that Japanese substantive law be applied to the underlying disputes related to the partnership agreement: "[T]he partners of this partnership hereby agree that this Partnership Agreement shall take effect under and shall be construed in accordance with Japanese law and that the rights and obligations of the partners of this partnership shall be governed by Japanese law." Clerk's Papers at 123.[4] Therefore, following the Court's reasoning in *Mastrobuono*, 514 U.S. 52, the

---

[4]The contract in *Ford*, 141 F.3d 243, is distinguishable from the IC-2 partnership agreement and the contract in *Ferro*, 142 F.3d 926, because the *Ford*

IC-2 partnership agreement's general Japanese choice-of-law provision does not unequivocally exclude Plaintiffs' fraud-in-the-inducement claims from the agreement's general arbitration clause. And it cannot be said " 'with positive assurance' that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *ML Park*, 71 Wn. App. at 739 (quoting *United Steelworkers*, 363 U.S. at 582-83).

Unlike *Mastrobuono*, however, this conclusion does not construe the ambiguous language against its presumed drafters, i.e., IC-2's corporate promoters. *See Berg v. Hudesman*, 115 Wn.2d 657, 677, 801 P.2d 222 (1990) (noting that courts ordinarily construe ambiguities in a document against its drafters). But the *Mastrobuono* Court merely cited "the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it" as further support for its conclusion that the punitive damages award was arbitrable. *Mastrobuono*, 514 U.S. at 62-63. Therefore, this consideration alone does not render a conclusion of arbitrability inconsistent with the Court's decision in *Mastrobuono*. Accordingly, even assuming that general arbitration clauses do not cover fraud-in-the-inducement claims under Japanese law, the strong federal policy favoring arbitration—especially in the context of international commercial transactions—dictates that Plaintiffs' fraud-in-the-inducement claims be submitted to arbitration in Tokyo, Japan.

## II. Arbitrability of Plaintiffs' Claims Against Grancorp Defendants

Plaintiffs contend that if their fraud-in-the-inducement

---

contract's arbitration clause specifically invoked Texas arbitration law. *Compare Ford*, 141 F.3d at 246 ("Any controversy or claim arising out of or relating to this Agreement, or the breach thereof shall be settled by arbitration in accordance with the Texas General Arbitration Act[.]") *with Ferro*, 142 F.3d at 931 n.7 ("The Parties hereto agree that all of the provisions of this Agreement and any questions concerning its interpretation and enforcement shall be governed by the laws of the State of Ohio, USA exclusive of its choice of law rules[.]").

claims are arbitrable, the trial court erred by not compelling arbitration against all of the defendants, including the Grancorp Defendants. The Grancorp Defendants, on the other hand, contend that the trial court properly refused to compel arbitration against them because they did not join the APC Defendants' Motion to Compel Arbitration. Alternatively, the Grancorp Defendants contend that even if they did join APC Defendants' motion, the trial court's order staying the proceedings against all the defendants but compelling arbitration only between Plaintiffs and the APC Defendants was within the trial court's discretion to efficiently manage the case.

■■ ■■ The APC Defendants' Memorandum and Motion to Compel Arbitration requested the trial court to stay the proceedings and refer Plaintiffs' claims to mediation and arbitration in Japan. The Grancorp Defendants' Memorandum in Support of the APC Defendants' Motion to Compel Arbitration stated that the Grancorp Defendants understood the partnership agreement as requiring arbitration of Plaintiffs' claims and concurred with the APC Defendants' motion. Therefore, as Plaintiffs contend, the Grancorp Defendants in effect joined in the APC Defendants' Motion to Compel Arbitration.

As the Grancorp Defendants point out, however, trial courts are afforded considerable discretion in managing their civil caseloads "to achieve the orderly and expeditious disposition of cases." *Woodhead v. Discount Waterbeds, Inc.*, 78 Wn. App. 125, 129, 896 P.2d 66 (1995), *review denied*, 128 Wn.2d 1008 (1996). But once a party moves to compel arbitration of a particular dispute and the court determines that the parties have agreed to arbitrate that dispute, the court *must* order the parties to proceed to arbitration " 'save upon such grounds as exist at law or in equity for the revocation of any contract.' " *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-18, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985) (quoting 9 U.S.C.A. § 2). This is especially true when the arbitration agreement falls under the Convention:

The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, art. II, ¶ 3, 9 U.S.C.A. § 201; *accord Ledee v. Ceramiche Ragno*, 684 F.2d 184, 187 (1st Cir. 1982). The Grancorp Defendants have not asserted any legal or equitable grounds for revoking the partnership agreement as a whole or the arbitration clause in particular. Therefore, because the trial court properly found that the partnership agreement required arbitration of Plaintiffs' fraud-in-the-inducement claims, the trial court abused its discretion by not compelling arbitration between Plaintiffs and the Grancorp Defendants.

## CONCLUSION

The trial court properly ordered Plaintiffs to arbitrate their fraud-in-the-inducement claims with the APC Defendants. But the trial court abused its discretion by not compelling arbitration between Plaintiffs and the Grancorp Defendants. Therefore, we affirm the trial court in part, reverse in part, and remand with instructions to compel immediate arbitration between Plaintiffs and both the APC Defendants and the Grancorp Defendants, in Tokyo, Japan.

COLEMAN and GROSSE, JJ., concur.

Review denied at 137 Wn.2d 1012 (1999).