[No. 48428-1-I. Division One. November 19, 2001.]

MARINA COVE CONDOMINIUM OWNERS ASSOCIATION, *Respondent*, v. ISABELLA ESTATES, ET AL., *Appellants*.

*Martin L. Zionitz* and *Mark J. Wilson* (of *Peizer, Richards & Zionitz, P.S.*), for appellants.

*Jo M. Flannery, James L. Strichartz*, and *Jerry H. Stein*, for respondent.

BAKER, J. — The Marina Cove Condominium Owners Association (the Association) sued the condominium's developer, Isabella Estates, for breach of implied warranties of quality under the Washington Condominium Act (WCA). The trial court denied Isabella Estates' motion to compel binding arbitration under the parties' limited warranty agreement. Because the right to judicial proceedings may not be waived under the WCA, we affirm.

I

Isabella Estates, through its general partner, Lakewood Construction,[1] built a 33-unit condominium project called the Marina Cove Condominiums. As an addendum to both its declaration of covenants[2] and its public offering statement,[3] it attached the Lakewood Construction Limited Warranty, a detailed and comprehensive document that sets forth the nature and extent of express warranties

---

[1] Lakewood Construction is the operating name of the Trigny Corporation.

[2] *See* RCW 64.34.200(1) (requiring formation of condominium by filing of declaration, which includes provisions regarding the name of the project, the unit boundaries, legal descriptions, creation of a homeowners association, insurance provisions, etc.). *See* RCW 64.34.216.

[3] Another document statutorily required to be produced to any purchaser, containing pertinent information about the condominium, the builder, the owners association, etc. *See* RCW 64.34.410.

offered, detailed exclusions, and the parties' contractual remedies.

After all the units were sold, the homeowners discovered alleged defects in the construction of the buildings. When they were unable to resolve their warranty disputes, the homeowners association sued for breach of implied warranties under the Washington Condominium Act. Isabella Estates moved to dismiss on the ground that the parties must submit to binding arbitration under the terms of the limited warranty. The issue was tried pursuant to chapter 7.04 RCW. The trial court determined that the Lakewood Construction Limited Warranty was unenforceable. Isabella Estates appeals.

## II

■ Preliminarily, Isabella Estates argues for reversal and remand because the Association failed to serve it with notice of presentation and copies of proposed findings of fact and conclusions of law. CR 52(c) states:

> Unless an emergency is shown to exist, or a party has failed to appear at a hearing or trial, the court shall not sign findings of fact or conclusions of law until the defeated party or parties have received 5 days' notice of the time and place of the submission, and have been served with copies of the proposed findings and conclusions.

In this case, no emergency or failure to appear by Isabella Estates excuses the Association's noncompliance with CR 52(c). Moreover, the fundamental role of each party in the presentation of findings of fact and conclusions of law makes it rare that violation of the rule would constitute harmless error.[4] Here, however, the issues on appeal involve solely questions of law, upon which the trial court's findings of fact and conclusions of law have no bearing. Because the Association's failure to comply with CR 52(c)

---

[4] *See Seidler v. Hansen*, 14 Wn. App. 915, 547 P.2d 917 (1976) (violation of CR 52(c) harmless error where defendant received contents of proposed findings in plaintiff's motion to take additional evidence).

did not prejudice Isabella Estates, remand is not required.

Isabella Estates argues that the parties are bound by their agreement to submit to binding arbitration under the Lakewood Construction Limited Warranty. The Association argues that the limited warranty was not a negotiated agreement of the parties, but contends that we need not determine whether the parties entered into such an agreement because the Washington Condominium Act does not permit parties to waive enforcement of its provisions by judicial proceeding.

In 1989, the Legislature adopted the WCA[5] to make uniform the law among the states concerning the creation and management of condominiums, and the consumer protections for condominium purchasers.[6] RCW 64.34.100(2), which is part of the act, states, "Any right or obligation declared by this chapter is enforceable by judicial proceeding." Isabella Estates interprets the language as creating a cause of action, but not as establishing a substantive right that may not be altered by agreement.

Statutory interpretation is a question of law, which we review under an error of law standard.[7] Our first task is to determine whether or not the statute is ambiguous. A statute is ambiguous if it is susceptible to more than one reasonable interpretation.[8] But a court does not discern ambiguity simply because more than one interpretation is conceivable.[9] The terms in RCW 64.34.100 in the context of the statute as a whole reflect no ambiguity.

When interpreting an unambiguous statute, a court derives its meaning from the wording of the statute itself.[10]

---

[5] Ch. 64.34 RCW.

[6] RCW 64.34.950; ch. 64.34 RCW, generally.

[7] *State v. Bright*, 129 Wn.2d 257, 265, 916 P.2d 922 (1996).

[8] *Berger v. Sonneland*, 144 Wn.2d 91, 105, 26 P.3d 257 (2001).

[9] *Berger*, 144 Wn.2d at 105.

[10] *Berger*, 144 Wn.2d at 105.

Plain words do not require construction.[11] Moreover, courts assume that the Legislature means exactly what it says.[12] In this case, it is RCW 64.34.455 that creates a cause of action. It states in pertinent part:

> If a declarant or any other person subject to this chapter fails to comply with any provision hereof or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief.

The text of RCW 64.34.100(2) provides the method by which a claim is maintained. The Legislature's choice of language, that the act "is enforceable by judicial proceeding" is definitive, and any argument that it should be interpreted as permissive is eclipsed by RCW 64.34.030, which states:

> Except as expressly provided in this chapter, provisions of this chapter may not be varied by agreement, and rights conferred by this chapter may not be waived.

Regardless of whether terms of the act express a substantive right or make some other provision, neither may be modified by agreement unless explicit authority to do so exists elsewhere in the chapter. The WCA grants that authority in several of its sections,[13] but it allows for no modification of RCW 64.34.100(2).

Isabella Estates contends that such a holding is contrary to Washington's strong public policy favoring arbitration.[14] We agree that Washington courts voice a preference for arbitration in other contexts, but we will not defy express provisions of a statute to further that policy.[15] Moreover,

---

[11] *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 964, 977 P.2d 554 (1999).

[12] *Davis*, 137 Wn.2d at 964.

[13] See UNIF. CONDO. ACT § 1-104 cmt., 7 U.L.A. Part II 222 (1997), listing all provisions of the act that allow for modification by agreement.

[14] *See ML Park Place Corp. v. Hedreen*, 71 Wn. App. 727, 862 P.2d 602 (1993).

[15] *See Kamaya Co. v. Am. Prop. Consultants, Ltd.*, 91 Wn. App. 703, 959 P.2d 1140 (1998), *review denied*, 137 Wn.2d 1012, 978 P.2d 1099 (1999) (in the context of international transactions, federal policy strongly favors arbitration); *Perez v. Mid-Century Ins. Co.*, 85 Wn. App. 760, 934 P.2d 731 (1997) (in context of

nothing in the language of RCW 64.34.030 and .100 prevents parties from mediating or otherwise settling their disputes in any manner they wish, including nonbinding arbitration. The WCA restricts only parties' ability to abrogate enforcement of its terms by judicial proceeding should alternative methods of dispute resolution fail.

## III

We next review the validity of the warranties set forth in the Lakewood Construction Limited Warranty in light of the Legislature's stated intent that the WCA not prevent or be inconsistent with the use of insured warranty programs.[16] Isabella Estates assigns error to the trial court's conclusion that the limited warranty is unenforceable as an impermissible general disclaimer of implied warranties under the WCA. In addition to any express warranties a declarant[17] or dealer[18] might offer, a purchaser of a condominium has the benefit of the following implied warranties under the WCA:

**Implied warranties of quality** (1) A declarant and any dealer warrants that a unit will be in at least as good condition at the earlier of the time of the conveyance or delivery of possession as it was at the time of contracting . . . .

(2) A declarant and any dealer impliedly warrants that *a unit*

---

arbitration under UIM insurance policy, arbitrator not disqualified by court on basis of possible partiality where each party selected an arbitrator for tripartite panel and the two arbitrators then selected a third); *ML Park Place Corp.*, 71 Wn. App. 727 (party did not waive judicial review of whether defendant's counterclaims were arbitrable by requesting that arbitrator rule on arbitrability. To hold otherwise would defeat Washington's strong public policy in favor of arbitration).

[16] SENATE JOURNAL, 51st Leg., Reg. Sess. 2091 (Wash. 1990); UNIF. CONDO. ACT § 4-115 cmt., 7 U.L.A. Part II 360 (1997).

[17] Defined as, "[a] person or group of persons acting in concert who (a) executes as declarant a declaration . . . or (b) reserves or succeeds to any special declarant right under the declaration." RCW 64.34.020(13). A "declaration" is a document that creates a condominium. RCW 64.34.020(15).

[18] Defined as, "[a] person who owns or has a right to acquire either six or more units in a condominium or fifty percent or more of the units in a condominium containing more than two units." RCW 64.34.020(12).

*and the common elements in the condominium* are suitable for the ordinary uses of real estate of its type and that any improvements made or contracted for by such declarant or dealer will be:

*(a) Free from defective materials; and*

*(b) Constructed in accordance with sound engineering and construction standards, and in a workmanlike manner in compliance with all laws then applicable to such improvements.*[19]

(Emphasis added.) The act allows declarants or dealers to exclude or modify these warranties as follows:[20]

(1) Except as limited by subsection (2) of this section, implied warranties of quality:

(a) May be excluded or modified by written agreement of the parties . . .

. . . .

(2) With respect to a purchaser of a unit that may be occupied for residential use, no general disclaimer of implied warranties of quality is effective, but a declarant and any dealer may disclaim liability in an instrument signed by the purchaser for a specified defect or specified failure to comply with applicable law, if the defect or failure entered into and became a part of the basis of the bargain.[21]

In this case, the Lakewood Construction Limited Warranty sets forth an exhaustive list of items covered or excluded. It describes the developer's responsibilities for each warranted item as follows:

The Performance Standards list specific items (Defects) within each separate area of coverage. The first section covers Workmanship and Materials; the second section covers Systems. The standards are expressed in terms of performance criteria. For easy comprehension, the format is designed as follows:

---

[19] RCW 64.34.445.

[20] RCW 64.34.445(4).

[21] RCW 64.34.450.

**Possible Deficiency**—a brief statement, in simple terms, of problems that may be encountered.

**Performance Standard**—a performance standard relating to a specific deficiency.

**Responsibility**—a statement of the corrective action required of the Builder to repair the deficiency or a statement of the Condominium Owner's maintenance responsibilities.

The performance standards under the limited warranty are measured by governmental rules, regulations and building codes, the condominium's plans and specifications, the standards set forth in the agreement itself, and locally accepted building practices. Essentially, the limited warranty sets forth the statutory and common law standards of quality for implied warranties.[22]

■ ■ The trial court found that the list of items in the limited warranty was so extensive that it essentially addressed every item that would otherwise be covered by the WCA's implied warranties of quality.[23] On that basis, it concluded that it was an impermissible general disclaimer of implied warranties and invalidated the warranty. But a disclaimer is defined as, "a denial or disavowal of legal claim."[24] With the exception of specified exclusions, the express restatement of implied warranties in the limited warranty does not constitute a disavowal of any warranty of quality. But neither does it modify the statutory implied warranties, as Isabella Estates contends.[25] In effect, the limited warranty converted previously implied warranties

---

[22] *See* RCW 64.34.445(2)(b); *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 799 P.2d 250 (1990) (builder-vendors of residential dwellings impliedly warranted that the homes they constructed complied with applicable building code requirements, were built in a workmanlike manner, and were suitable for habitation).

[23] As neither party challenged this finding, it is a verity on appeal. *Stuewe v. Dep't of Revenue*, 98 Wn. App. 947, 950, 991 P.2d 634, *review denied*, 141 Wn.2d 1015 (2000).

[24] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 645 (1969).

[25] The limited warranty provides:

[I]n the event of any variance between the provisions of this Limited Warranty and the implied warranty provided under RCW 64.34.445 it is agreed that the provisions of this Limited Warranty: (a) shall control; (b) shall be deemed a

into express warranties. The fact that all implied warranties have been explicitly addressed does not constitute a general disclaimer.

■ We address this issue only because of the trial court's ruling that the limited warranty covered every item that would otherwise be covered under the implied warranties of quality. Arguably, until a defect is claimed, it is impossible to know whether this warranty agreement is as comprehensive as it seems. From that perspective, paragraph 1.9 of the limited warranty, which states that no other express or implied warranties outside of the limited warranty are available to the unit owner, is an unlawful general disclaimer of implied warranties under the WCA. Moreover, if Isabella Estates argues at trial that any of the alleged defects by the Association were disclaimed in whole or in part in the limited warranty, the validity of those disclaimers would be subject to close scrutiny in light of the requirements of the act regarding disclosure, acknowledgement, obligations of good faith, liberal construction, and unconscionability.[26]

■ Contrary to the Association's position, however, whether a defect was known and existing at the time of disclaimer is not determinative of its validity. RCW 64.34.450(2) allows a declarant and any dealer to disclaim implied warranties of quality on a residential unit "if the [specified] defect or failure [to comply with applicable law] entered into and became a part of the basis of the bargain." Although the language could reasonably be interpreted as requiring knowledge of an existing defect for proper disclaimer, it is not an express requirement in the statute. Because the statute is susceptible to more than one reasonable interpretation, we conclude that it is ambiguous.

---

modification of such implied warranty as authorized by RCW 64.34.450; and (c) shall be deemed to be a part of the basis of the bargain between the Owner and the Builder.

But declaring an express warranty to be a modification of an implied warranty does not, in itself, make it so.

[26] See RCW 64.34.080, .090, .450.

When construing an ambiguous statute, courts must effect the intent of the Legislature and the purpose of the statute as a whole.[27] Statutes must be construed so that all statutory language is given effect, with no portion rendered meaningless or superfluous.[28] In this case, the Washington Legislature's express purpose in adopting the WCA was to make uniform the laws of the several states concerning condominiums.[29] Because RCW 64.34.950 requires that we apply and construe the WCA to effect that purpose and because the WCA substantially conforms to the Uniform Condominium Act (UCA), we look to the UCA's Official Comment in determining the intent of the Legislature.

Section 4-115 of the Uniform Condominium Act parallels RCW 64.34.450 and is entitled "Exclusion or Modification of Implied Warranties of Quality." The Comment to the section states in relevant part:

4. Under subsection (b), general disclaimers of implied warranties are not permitted with respect to purchasers of residential units. However, a declarant may disclaim liability for a specified defect or a specified failure to comply with applicable law in an instrument signed by such a purchaser. The requirement that the disclaimer as to each defect or failure be in a signed instrument is designed to insure that the declarant sufficiently calls each defect or failure to the purchaser's attention and that the purchaser has the opportunity to consider the effect of the particular defect or failure upon the bargain of the parties. *Consequently, this section imposes a special burden upon the declarant who desires to make a "laundry list" of defects or failures by requiring him to emphasize each item on such a list and make its import clear to prospective purchasers. For example, the declarant of a conversion condominium might, consistent with this subsection, disclaim certain warranties for "all electrical wiring and fixtures in the building, the furnace, all materials comprising or supporting the roof, and all components of the air conditioning system."*

---

[27] *Davis*, 137 Wn.2d at 963.

[28] *Davis*, 137 Wn.2d at 963.

[29] RCW 64.34.950.

5. This section is not intended to be inconsistent with, or to prevent, the use of insured warranty programs offered by some home builders. *However, under the Act, the implied warranty that a new condominium unit will be suitable for ordinary uses (i.e., habitable) and will be constructed in a sound, workmanlike manner, and free of defective materials, cannot be disclaimed by general language.*

(Emphasis added.)

This Comment suggests that specific disclaimers of implied warranties may occur, for instance, in the context of conversion condominiums, where the physical structure predates the creation of a legal condominium. The sample "laundry list" of permissible disclaimers illustrates that parties may or may not know of the existence of the defects being disclaimed. Thus it is not knowledge of existing defects that is material, but rather the awareness of the significant financial exposure a buyer faces by reason of the disclaimer. Although these disclaimers will generally be executed in the context of conversion condominiums, paragraph 5 makes clear that a declarant/dealer of a new condominium may make specific disclaimers as well. Consistent with the Comment, we hold that specific defects need not be known at the time of contracting in order to properly disclaim an implied warranty under the WCA.

## IV

 Finally, Isabella Estates argues that the parties must nevertheless submit to binding arbitration under the limited warranty because, in this case, the Federal Arbitration Act preempts the WCA.[30] The Federal Arbitration Act (FAA) places arbitration agreements on the same footing as other types of contracts, and requires courts to enforce a written provision:

---

[30] Although the Association argues that we should not consider this issue because Isabella Estates failed to raise it to the trial court, we will exercise our discretion under RAP 2.5(a) and review it because of the import of the issue. *In re Marriage of Wendy M.*, 92 Wn. App. 430, 434, 962 P.2d 130 (1998).

[I]n any . . . contract evidencing a transaction involving commerce[31] to settle by arbitration a controversy thereafter arising out of such contract . . . [unless] such grounds . . . exist at law or in equity for the revocation of any contract.[32]

A transaction involving "commerce" is defined as:

[C]ommerce among the several States . . . but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.[33]

In *Allied-Bruce Terminix Cos. v. Dobson*,[34] the Supreme Court broadly interpreted the language "involving commerce" as reaching the full limit of Congress' Commerce Clause power. Later, in *United States v. Lopez*,[35] the Supreme Court clarified the extent of that Congressional power, holding that despite the Court's historical deference to Congress in regulating commerce, the appropriate test of Congress' power to regulate is whether the activity sought to be regulated has a substantial effect on interstate commerce.

In the context of the FAA, the Court held in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*[36] that a sales transaction, in which a corporation from one state sold its business to a corporation in another state and agreed not to compete for a multi-state customer base, had a substantial effect on interstate commerce and was therefore subject to the FAA. But in the post-*Lopez* case of *L&L Kempwood Associates, L.P. v. Omega Builders, Inc.*,[37] the Texas Court of Appeals held that a contract between an out-of-state property owner and a Texas contractor to perform repair

---

[31] Defined as "commerce among the several States or with foreign nations." 9 U.S.C. § 1.

[32] 9 U.S.C. § 2.

[33] 9 U.S.C. § 1.

[34] 513 U.S. 265, 274-75, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995).

[35] 514 U.S. 549, 558-59, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995).

[36] 388 U.S. 395, 405, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967).

[37] 972 S.W.2d 819, 822 (Texas Ct. App. 1998).

work on an apartment complex located in Texas was not a transaction substantially affecting interstate commerce and therefore the FAA did not apply.

■ Similarly here, the Marina Cove Condominiums were constructed, marketed and sold solely within the state of Washington. The contract at issue is a limited warranty offered by a Washington corporation on condominium units located within the state, whose owners all reside in Washington. The only connection to other states involves one buyer, who moved to Washington from another state, and another buyer, who transferred funds from an out-of-state bank account for use as a down payment on one unit purchased. That negligible contact with other states does not constitute a substantial effect on interstate commerce. The FAA does not apply.

Affirmed.

AGID, C.J., and APPELWICK, J., concur.