71 P.3d 692 (2003)
117 Wash.App. 369
PARK AVENUE CONDOMINIUM OWNERS ASSOCIATION, Respondent/Cross-Appellant,
v.
BUCHAN DEVELOPMENTS, L.L.C., Appellant/Cross-Respondent.
No. 49213-6-I.
Court of Appeals of Washington, Division 1.
June 30, 2003.
Reconsideration Denied August 27, 2003.
*693 Michael B. King, Lane, Powell, Spears and Lubersky, Stephen M. Todd, Todd & Wakefield, Seattle, WA, for Appellant.
Bo Barker, Dean E. Martin, Barker & Martin, P.S., Robert J. Curran, John T. Petrie, John P. Mele, Ryan, Swanson & Cleveland, PLLC, Seattle, WA, for Respondent.
Jodi C. Slavik, Olympia, WA, for Amicus Curiae Building Industry Assoc. of Wash.
Howard M. Goodfriend, Evy McElmeel, Edwards, Sieh, Smith & Goodfriend, P.S., Seattle, WA, for Greater Seattle Chamber of Commerce The Housing Development Consortium of Seattle-King Co. and The Housing Partnership.
ELLINGTON, J.
This action concerns the implied warranties of quality construction under the Washington Condominium Act, and raises questions about disclaimers, the standard of proof of breach, and the measure and proof of damages. Because the statute bars general disclaimers of the warranties of quality for residential units, the disclaimers in the builder's limited warranty were ineffective. At trial on the implied warranty claims, the court properly instructed the jury, using the language of the statute to define breach and the customary construction damages instructions. The court also properly ruled that relocation costs and litigation expenses were not recoverable. We therefore affirm.

Facts
In 1997, Buchan Developments, L.L.C. contracted to build the Park Avenue Condominiums, a 38-unit complex in Kirkland. Buchan provided certain limited builder's warranties for one to two years.
In September 1999, the Park Avenue Condominium Owners Association filed a suit seeking to recover costs for repair of numerous alleged construction defects, including defects in roofing; exterior insulation and finish system cladding; exterior wood siding; patios, decks, and guardrails; the absence of any hallway ventilation; fractures in retaining walls; and improper drainage. Park Avenue asserted breach of the builder's express warranties, breach of the Washington Condominium Act implied warranties, and violations of the Consumer Protection Act.
*694 Buchan moved for summary judgment. The court dismissed the express warranty and Consumer Protection Act claims, but refused to dismiss the implied warranty claims. On Park Avenue's motion for partial summary judgment, the court ruled that certain undisputed defects breached the implied WCA warranties. The court reserved other claims of breach for trial, along with all questions of damages. The jury ultimately awarded Park Avenue $2,300,000. Both parties appeal.
General Disclaimer of Implied Warranties
The Washington Condominium Act (WCA)[1] was enacted in 1989 to address all aspects of condominium construction, sales, and ownership. The Act substantially adopted the major provisions of the Uniform Common Interest Ownership Act (Uniform Act).[2] A principal purpose of the WCA was to provide protection to condominium purchasers,[3] in part through creation of implied warranties of quality construction:
(2) A declarant and any dealer impliedly warrants that a unit and the common elements in the condominium are suitable for the ordinary uses of real estate of its type and that any improvements made or contracted for by such declarant or dealer will be:
(a) Free from defective materials; and
(b) Constructed in accordance with sound engineering and construction standards, and in a workmanlike manner in compliance with all laws then applicable to such improvements.[4]
Buchan is the declarant on the Park Avenue project.
For condominiums intended for residential use, general disclaimers of the implied warranties of quality are prohibited. Specific disclaimers or modifications of the warranties are allowed, so long as certain conditions are met:
(2) With respect to the purchaser of a unit that may be occupied for residential use, no general disclaimer of implied warranties of quality is effective, but a declarant and any dealer may disclaim liability in an instrument signed by the purchaser for a specific defect or specified failure to comply with applicable law, if the defect or failure entered into and became a part of the basis of the bargain.[5]
Buchan's position is that the WCA warranties were entirely displaced[6] by its limited contractual warranty, which had expired,[7] and that Park Avenue thus had no viable claim for construction defects. The first question is whether Buchan effectively disclaimed the implied warranties of quality. It did not. Its only disclaimers were general, and none of the other requirements of the statute were satisfied.
The Park Avenue purchase and sale agreements stated that Buchan's express limited warranty represented "the sole and exclusive rights, duties, obligations and remedies of the Buyer and Seller with respect to warranty claims."[8] The express warranty contained a paragraph titled "Exclusive Rights and Remedies," which provided:
This Limited Warranty, and the obligations of the Builder and the rights of the Owner hereunder, is given by the Builder and accepted by the Home Owner: (a) in lieu of and to the exclusion of all other *695 express or implied warranties ... and (b) in lieu and to the exclusion of all other legal or equitable rights, remedies or causes of action.[9]
As we held in Marina Cove Condominium Owners Association v. Isabella Estates,[10] these are impermissible general disclaimers.
Both the Buchan and Marina Cove warranties also used the same language to accomplish modification of the implied warranties:
[I]n the event of any variance between the provisions of this Limited Warranty and the implied warranty provided under RCW 64.34.445 it is agreed that the provisions of this Limited Warranty: (a) shall control; (b) shall be deemed a modification of such implied warranty as authorized by RCW 64.34.450; and (c) shall be deemed part of the basis of the bargain between the Owner and Builder.[11]
We considered identical language in Marina Cove, and held it ineffective to accomplish a modification of the implied warranties.[12]
According to a Comment to the Uniform Act, a declarant may disclaim a "laundry list" of implied warranties.[13] We relied upon this Comment in Marina Cove to hold a declarant may disclaim implied warranties even if the defect is unknown at the time of contracting.[14] From this, Buchan contends its list of warranties, together with its general disclaimers, amounted to a laundry list of specific disclaimers of coverage beyond the limited warranty. But this interpretation would nullify the legislative prohibition against general disclaimers. Nothing in Marina Cove or in the Comment suggests that lists of defects for which warranties are expressly provided could, standing alone, amount to lists of defects for which implied warranties are disclaimed. Buchan's disclaimers were ineffective.
Even if Buchan had effectively disclaimed liability as to specified defects, the other requirements of the statute were not satisfied. Disclaimers must appear "in an instrument signed by the purchaser for a specific defect or specified failure to comply with applicable law, if the defect or failure entered into and became a basis of the bargain."[15] This did not occur. Homeowners were to be issued certificates acknowledging receipt of the warranty, which were to be signed by Buchan's representative and each homeowner. Buchan did not sign any of the certificates, and only 15 of 38 buyers signed. In the standard addendum to the sale agreement, the only mention of the limited warranty is as follows:
WARRANTIES. Buyer acknowledges that the provisions of the Limited Warranty referred to in the Public Offering Statement represent the sole and exclusive rights, duties, obligations and remedies of Buyer and Seller with respect to warranty claims. Except for the forgoing warranty, Seller makes no other express or implied warranties.[16]
This is another invalid general disclaimer statement, and cannot qualify as an instrument *696 signed by the buyer in which the declarant disclaims liability for a specific defect, or as a disclaimer of a specified defect entered into and made a part of the basis of the bargain.[17] In short, Buchan did not satisfy the requirements of RCW 64.34.450. Because Buchan made no effective disclaimer, the statutory implied warranties remained undisturbed. WCA warranties carry a four-year statute of limitations,[18] which Park Avenue satisfied.

Implied Warranties: Standard for Proof of Breach
The implied warranties are first, suitability, and second, quality of materials and construction. RCW 64.34.445(2) provides:
A declarant and any dealer impliedly warrants that a unit and the common elements in the condominium are suitable for the ordinary uses of real estate of its type and that any improvements made or contracted for by such declarant or dealer will be:

(a) Free from defective materials; and
(b) Constructed in accordance with sound engineering and construction standards, and in a workmanlike manner in compliance with all laws then applicable to such improvements.[19]
The trial court ruled on summary judgment that certain aspects of the construction of Park Avenue violated building codes, violated engineering and construction standards, and/or included defective materials, and that these defects breached the WCA implied warranties of quality as a matter of law.
Buchan does not contest the facts. Rather, Buchan and Amici[20] argue that requiring compliance with the building code amounts to a perfection standard. They liken the warranty of quality construction to the Uniform Commercial Code warranty of merchantability,[21] and contend it requires only workmanlike construction, not code compliance. Further, they contend that any alleged defect should be "material" before it is actionable as a breach of the warranties of quality.[22]
We reject these arguments, because they run counter to the express purposes of the statute and conflate the WCA warranties of suitability and quality. Most important, they confuse the analysis of breach with the proof of damages.
The WCA implied warranty of quality construction differs markedly from the UCC warranty of merchantability. The WCA implied warranty of suitability is a standard of ordinary use ("suitable for the ordinary uses of real estate of its type"[23]), and thus resembles the UCC warranty of merchantability, that goods are suitable for the ordinary purposes for which they are used.[24] According to the legislative history, however, the warranty of quality construction was *697 intended to overturn the old rule that a "professional seller of real estate makes no implied warranties of quality,"[25] and to provide broader protection than simple suitability:
The warranty as to quality of construction for improvements made or contracted for by the declarant or made by any person before the creation of the condominium is broader than the warranty of suitability. Particularly, it imposes liability for defects which may not be so serious as to render the condominium unsuitable for ordinary purposes of real estate of similar type.[26]
Because a merchantability standard adds nothing to the suitability warranty, merchantability is not the standard for the warranty of quality construction.
Buchan points to a 1992 amendment rearranging the order of the words in the implied warranty of quality construction, contending it evidences a legislative intent to eliminate the warranty of code compliance. Before the amendment, the statute imposed an implied warranty that the building was "(b) Constructed in accordance with applicable law, according to sound engineering and construction standards, and in a workmanlike manner."[27] The amendment changed this subsection to "(b) Constructed in accordance with sound engineering and construction standards, and in a workmanlike manner in compliance with all laws then applicable to such improvements."[28] Buchan contends the amendment shifted the focus of the warranty from code compliance to a reasonableness standard of workmanlike construction, of which code compliance is merely evidence, not a separate requirement.[29]
We find no legislative history to support this interpretation, and reject this reading of the amendment. The language is unambiguous. Code compliance is part of the warranty of quality. The addition of the modifier "all" (which appears to place more, not less, emphasis on the importance of code compliance) was likely intended to clarify that the warranty requires compliance with all laws applicable to improvements, as opposed to laws potentially governing the project or workplace. The repositioning of the phrases had no effect on their meaning; if the legislature had intended to eliminate the requirement of code compliance, it would have done so clearly. Whether code compliance is described as a separate warranty, or as a minimum standard of workmanlike construction, the statute unambiguously requires it.
Buchan and Amici ask us to require that a defect be "material" before it is actionable. Buchan uses this case as an example, contending its liability was premised mainly upon technical violations of the code, and that the jury awarded the high cost of replacing the external insulation and finish system (EIFS) "simply because the EIFS as installed did not employ one-half-inch joints, when the EIFS is still doing what it was supposed to do,"[30] and the walls are still "keeping out moisture."[31] Trial evidence was not, however, limited to half-inch joints, but included evidence of numerous flaws in the EIFS installation, resulting in saturation of interior walls, leaking windows, and attendant rot and decay. As to the half-inch joints, Park Avenue's expert testified that for the EIFS product used at Park Avenue, joint size was critical to permit proper sealing and prevent water intrusion. The manufacturer's specified joint size was not observed in any of the joints the expert examined, and the joints were failing and causing water intrusion. Homeowners testified about leaking windows and water falling from light fixtures, splashing onto floors and furniture. Buchan nonetheless contends that any technical code violation in the EIFS installation did not *698 amount to a material defect. We strongly doubt this is the test the legislature meant to adopt for the WCA warranties of quality.
Amici Housing Development Consortium ask us to hold "that a violation of a provision of the Uniform Building Code is actionable as a breach of the implied warranty of quality... if the code violation materially affects the value or use of a condominium unit or the common elements."[32] This, however, puts the cart before the horse. Effect on value is not part of the definition of breach, it is part of the damages determination.
Amicus Building Industry Association of Washington (BIAW) directs our attention to judicially created rules that limit builder liability, such as the economic loss rule, and to the judicially created warranty of habitability, which does not include "mere defects in workmanship."[33] The BIAW suggests those rules support similar limitations here, which should be expressed by adoption of a materiality requirement. But those rules evolved in arenas in which the legislature had not spoken. Where the legislature has acted to create rights and remedies, courts cannot enlarge or restrict those rights or remedies unless the statute is unclear and we are confident our interpretation is consistent with legislative intent. Here, the statute is not unclear, and the requested interpretation is not consistent with legislative intent. The warranty of habitability addresses whether a structure is reasonably fit for use as a residence,[34] and is therefore like the WCA warranty of suitability. As previously discussed, the warranties of quality go beyond suitability.
These arguments are not persuasive, for several reasons. We first note that building codes are not perfection standards. Rather, they set mandatory minimum standards.[35] Second, materiality is a term of art in contract analysis, and identifies a breach so significant it excuses the other party's performance and justifies rescission of the contract.[36] As stated in the Washington pattern jury instructions, a material breach is one "serious enough to justify the other party in abandoning the contract ... one that substantially defeats the purpose of the contract."[37] To require that a defect be so serious as to defeat the purpose of the contract before it breaches the implied warranty of quality construction is essentially to make the warranty of quality redundant, because such a defect would likely render the building not suitable for ordinary purposes. This would eliminate the additional protection intended by the warranty of quality, in direct contradiction to the legislative intent to provide a remedy for defects "which may not be so serious as to render the condominium unsuitable for ordinary purposes."[38]
Perhaps most important, however, these arguments conflate the analysis. Proof of breach is one thing; proof of damages another. Liability attaches only when both are present. Under the WCA, a breach may be technical, but the damages may not. A building code violation or other defect does not create automatic liability under the warranty of quality construction. Buchan and Amici do not clearly define the suggested materiality requirement, and we doubt they mean to suggest that the warranty of quality is breached only by defects so serious as to justify rescission. As we will further discuss, *699 however, some degree of materiality is already part of the damages analysis, because to create liability, a defect must result in damages that are not disproportionate to the loss of value it causes.
Further, the means to protect against liability are set forth in the statute. In creating the warranties, the legislature allocated the risk of construction defects to the parties best able to ensure construction quality, but authorized reduction of that risk by disclaimer, so long as certain requirements are observed.[39] Declarants have only to follow the statute.
There is no indication of legislative intent to support the gloss on the statute requested here. The warranty of quality construction includes code compliance. The limits of actionability are found in the rules for determining damages.

Damages
The parties make several arguments about the measure of damages. We first address whether the court properly gave an instruction under Eastlake Construction Company v. Hess.[40]
In Eastlake, the court set forth "the proper measure of the owners' damages for breach of a construction contract resulting in both remediable and irremediable defects,"[41] and adopted the rule in Restatement (Second) of Contracts § 348 (1981):
If a breach [of a construction contract] results in defective or unfinished construction and the loss in value to the injured party is not proved with reasonable certainty, he may recover damages based on
(a) the diminution in the market price of the property caused by the breach or
(b) the reasonable cost of completing performance or of remedying the defects if that cost is not clearly disproportionate to the probable loss in value to him.[42]
Park Avenue contends the Eastlake rule does not apply in WCA warranty cases.[43] Park Avenue points out that Eastlake preceded the WCA and did not involve warranty claims, and that under the WCA, an aggrieved party is to be "put in as good a position as if the other party had fully performed"[44] a result it claims is not achieved under the Eastlake rule.
The WCA sets forth the general common law rule for contract damages,[45] however, not a new principle, and before the WCA was enacted, Eastlake set forth the application of this rule in construction cases. The Eastlake Restatement test is aimed at preventing a windfall in cases where the cost to remedy a construction defect is clearly disproportionate to any loss in value.[46] The court adopted the test expressly because of special difficulties in putting the injured party in the same position as if the contract had been properly performed by the builder.[47]
The court stated its approach as follows:
The rule recognizes that damages should put the injured party in the position which he would have enjoyed without the breach. In many cases this will be achieved by awarding the costs of repairing defective construction so as to conform to the contract. *700 Some defects, however, cannot be remedied without great expense and substantial damage to the rest of the structure.... In such cases, the cost of remedying the defect would far exceed the value to the injured party of the improvement. An award of the cost of repairs in such cases would therefore constitute a substantial windfall to the injured party. The cost of repairs should not be awarded if that cost is clearly disproportionate to the value to the injured party of those repairs.[48]
The legislature knows the common law rules.[49] Except for the express exclusion of consequential damages, nothing in the WCA indicates any intent to alter the common law damages calculation. The aim of preventing a windfall applies equally whether the defect is a breach of contract or of warranty, and the Eastlake test is particularly appropriate where an alleged breach may be technical and cause little or no damage.[50] The Eastlake instruction was proper.
Buchan challenges Instruction 12, which stated that physical damage is not a required element of proof for a breach of warranty claim. Buchan does not contend Instruction 12 misstated the law.[51] Rather, Buchan contends Instruction 12, when combined with the summary judgment ruling that Buchan breached the warranties of quality as to certain defects, and with the court's alleged refusal to permit Buchan to argue that absence of physical damage was relevant, essentially "gutted" the Eastlake instruction and created "a false implication that the breach of warranty was itself the damage."[52]
This argument seems to be founded upon a misunderstanding of the record. The court barred Buchan from arguing that physical damage is a required element of damages under the WCA.[53] But the court never prohibited Buchan from arguing that the absence of physical damage was relevant. Indeed, Buchan cross-examined Park Avenue's expert as to the lack of physical damage, without objection from Park Avenue.[54] The Eastlake instruction required the jury to determine whether the cost of repair of any defect would be disproportionate to the attendant loss in value. Buchan was able to introduce evidence that physical damage had not occurred, and to argue this suggested disproportionate repair costs.
We find no basis for Buchan's contention that various rulings and instructions created the impression that proof of breach constituted proof of damages. The jury was clearly instructed otherwise. The fact that Park Avenue was not required to prove physical damage did not relieve Park Avenue of its burden of showing actual damages. The damages instruction (which was unchallenged) properly placed the burden on Park Avenue to prove its damages, as did the instruction incorporating the summary judgment ruling (jurors must determine "what damages, if any, result[ed] from these breaches"[55]).
We find no error in the instructions or related rulings.

Litigation Expenses
The trial court awarded Park Avenue its reasonable attorney fees under RCW 64.34.455. Park Avenue contends the court should have construed the term "attorney fees" liberally to allow for an additional award of litigation expenses in order to make it whole. We disagree.
*701 Washington follows the American rule that fees, expenses and costs are not recoverable by the prevailing party absent specific statutory authority, contractual provision, or recognized grounds in equity.[56] The WCA does not specifically provide for an award of litigation expenses. Park Avenue nonetheless argues that the trial court is authorized to award litigation expenses in appropriate circumstances under Panorama Village Condominium Owners Association Board of Directors v. Allstate Insurance Company.[57]
Panorama Village created a limited exception to the American rule for bad faith insurance claims based upon the insurer's enhanced duty to its insured, and required that the insured be made whole by way of recoupment of the costs of obtaining policy benefits.[58] Although the WCA contains a similar "make whole" imperative, claims under the Act do not stem from a violation of a duty of good faith, and we decline to extend the doctrine to these circumstances. Nor does Park Avenue's claim fit the other narrow exceptions to the American rule, such as the express provision for costs in various civil rights statutes.[59] The trial court correctly refused to award litigation costs.

Relocation Expenses
The trial court ruled in limine that Park Avenue could not present evidence of relocation costs because consequential damages are barred by the WCA.[60] Park Avenue contends relocation costs are direct, not consequential, damages.
Consequential damages are not defined by the WCA, the Uniform Acts, or their commentaries. Black's Law Dictionary offers the following definition: "Losses that do not flow directly and immediately from an injurious act, the party, but that result indirectly from the act."[61] Relocation expenses here would stem from work undertaken to repair defects, that is, from the indirect results of Buchan's breach of warranty, not from the breach itself. These are consequential damages.
Park Avenue contends that even if relocation expenses are consequential damages, they are permitted by the "other rule of law" reference in the statute.[62] But Park Avenue points to no other specific rule of law, and rather relies upon general common law sources. This broad reading of the exception makes the prohibition meaningless. Relocation costs were properly excluded.
In sum, we find no error, and affirm the judgment.
APPELWICK and SCHINDLER, JJ., concur.
NOTES
[1] Ch. 64.34 RCW.
[2] One Pac. Towers Homeowners Ass'n v. HAL Real Estate Inv. Inc., 148 Wash.2d 319, 328 n. 7, 61 P.3d 1094 (2002).
[3] 18 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 11.13 at 41 (1995); One Pac. Towers, 148 Wash.2d at 330, 61 P.3d 1094.
[4] RCW 64.34.445.
[5] RCW 64.34.450.
[6] "Buchan's position ... is that the Limited Warranty's express warranties replaced the WCA's implied warranties, which had been generally disclaimed by the terms and conditions of the Limited Warranty." Appellant's Cons.Reply Br. at 5.
[7] Park Avenue contends that Buchan's time-bar argument may not be raised on appeal because it was not made to the trial court. RAP 9.12. This is incorrect. Buchan made this argument in its memorandum in support of its motion for summary judgment.
[8] Clerk's Papers at 90d.
[9] Clerk's Papers at 71.
[10] 109 Wash.App. 230, 240, 34 P.3d 870 (2001).
[11] Clerk's Papers at 71; Marina Cove, 109 Wash. App. at 239 n. 25, 34 P.3d 870.
[12] Id. at 239, 34 P.3d 870 ("[T]he express restatement of implied warranties in the limited warranty does not constitute a disavowal of any warranty of quality[,] [b]ut neither does it modify the statutory implied warranties."); see also id. at 240 n. 25, 34 P.3d 870 ("[D]eclaring an express warranty to be a modification of an implied warranty does not, in itself, make it so.")
[13] UNIF. COMMON INTEREST OWNERSHIP ACT § 4-115 cmt. 4 (1997); see also 2 SENATE JOURNAL, 51st Leg., Reg. Sess., 1st & 2d Spec. Sess., at 2091 (Wash.1990) ("this section imposes a special burden upon the declarant who desires to make a `laundry list' of defects or failures by requiring him to emphasize each item on such a list and make its import clear to prospective purchasers. For example, the declarant of a conversion condominium might ... disclaim certain warranties for `all electrical wiring and fixtures in the building, the furnace, all materials comprising or supporting the roof, and all components of the air conditioning system'").
[14] Marina Cove, 109 Wash.App. at 242, 34 P.3d 870 ("specific defects need not be known at the time of contracting in order to properly disclaim an implied warranty under the WCA").
[15] RCW 64.34.450(2).
[16] Clerk's Papers at 90d.
[17] See RCW 64.34.450.
[18] RCW 64.34.452. The four-year statute of limitations may not be shortened by either oral or written agreement. See 2 SENATE JOURNAL, 51st Leg., Reg. Sess., 1st & 2d Spec. Sess., at 2091 (Wash.1990).
[19] (Emphasis added).
[20] Friend-of-court briefs were accepted from the Building Industry Association of Washington, and (jointly) The Housing Development Consortium of Seattle-King County (not including the Community Psychiatric Clinic), the Housing Partnership, and the Greater Seattle Chamber of Commerce.
[21] UCC § 2-314; RCW 62A.2-314.
[22] See Amicus Br. of The Housing Development Coalition at 11 ("The `workmanlike' standard is analogous to the `merchantable' standard of the implied warranty given to a purchaser of goods under the Uniform Commercial Code. The merchantability standard requires that a product `pass without objection in the trade,' be `fit for the ordinary purposes for which such goods are used,' and be of `fair average' quality. `Merchantability' thus turns on the standards of the industry given the price paid for the product." (Citations omitted)); see also Br. of Amicus Building Industry Ass'n of Washington at 11 ("The [Uniform Condominium Act] first calls for a decision of whether a variance from code rises to the level of a defect. Second is consideration of the seriousness of the defect, and to what degree it surpasses suitability standards. Thus, inherent in the determination of quality is materiality.").
[23] RCW 64.34.445(2).
[24] RCW 64.34.445(2); UCC § 2-314; RCW 62A.2-314.
[25] 2 SENATE JOURNAL, 51st Leg., Reg. Sess., 1st & 2d Spec. Sess., at 2089 (Wash.1990).
[26] Id. at 2090.
[27] Former RCW 64.34.445(2)(b) (1989).
[28] RCW 64.34.445(2)(b).
[29] RCW 64.34.100(1). Buchan argues generally that, as in negligence cases, breach of code requirements should be taken as evidence, but not proof, of breach of warranty. But the warranties exist only in the context of a purchase contract, and the statute provides for a remedy based on contract principles. Tort theories thus have no application here.
[30] Appellant's Opening Brief at 44.
[31] Appellant's Cons.Reply Brief at 20.
[32] Amicus Br. of The Housing Development Consortium at 1.
[33] See, e.g., Atherton Condo. Apartment-Owners Ass'n v. Blume Dev. Co., 115 Wash.2d 506, 522, 526, 799 P.2d 250 (1990).
[34] Id.
[35] See RCW 19.27.020 ("The purpose of this chapter is to promote the health, safety and welfare of the occupants or users of buildings and structures and the general public by the provision of building codes throughout the state .... [by, among other objectives, requiring] minimum performance standards and requirements for construction and construction materials, consistent with accepted standards of engineering, fire and life safety.").
[36] See Mitchell v. Straith, 40 Wash.App. 405, 410, 698 P.2d 609 (1985).
[37] 6A WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 302.03, at 127 (1997); see also RESTATMENT (Second) of Contracts § 241 (1981) (stating circumstances to be considered in determining materiality of breach).
[38] 2 SENATE JOURNAL, 51st Leg., Reg. Sess., 1st & 2d Spec. Sess., at 2090 (Wash.1990).
[39] RCW 64.34.450.
[40] 102 Wash.2d 30, 686 P.2d 465 (1984). Although this issue is raised by Park Avenue on cross-appeal in case of remand, our discussion of other damages issues requires that we first address Eastlake.
[41] Id. at 32, 686 P.2d 465.
[42] Id. at 48, 686 P.2d 465.
[43] Park Avenue contends the Eastlake rule does not apply when a homeowners association sues on its own behalf because a homeowners association does not have the option of selling the property, a possibility Park Avenue views as central to Eastlake's reasoning. We reject this reading of Eastlake, and note that an Eastlake instruction has been held appropriate in an action brought by a condominium homeowners association. See Panorama Village Homeowners Ass'n v. Golden Rule Roofing, Inc., 102 Wash.App. 422, 428-29, 10 P.3d 417 (2000). We see no basis for refusing to apply the standard rule because the party is an association rather than an individual owner.
[44] RCW 64.34.100(1).
[45] See Prier v. Refrigeration Eng'g Co., 74 Wash.2d 25, 442 P.2d 621 (1968).
[46] See Eastlake, 102 Wash.2d at 44-48, 686 P.2d 465.
[47] Id. at 39, 686 P.2d 465.
[48] Id. at 44-45, 686 P.2d 465.
[49] Price v. Kitsap Transit, 125 Wash.2d 456, 463, 886 P.2d 556 (1994).
[50] See Eastlake, 102 Wash.2d at 44-48, 686 P.2d 465.
[51] Buchan concedes that physical damage may not always be required for a finding of liability as, for example, where Buchan failed to install hallway ventilation, which caused no physical damage, but did cause potential loss in value of the property. See Appellant's Opening Brief at 47.
[52] Appellant's Cons.Reply Brief at 31.
[53] Buchan does not challenge this ruling.
[54] See Report of Proceedings (July 16, 2001) at 679-700.
[55] Clerk's Papers at 1117.
[56] Rorvig v. Douglas, 123 Wash.2d 854, 861, 873 P.2d 492 (1994).
[57] 144 Wash.2d 130, 143-44, 26 P.3d 910 (2001).
[58] Panorama Village, 144 Wash.2d at 143-44, 26 P.3d 910 (citing Olympic Steamship v. Centennial Ins. Co., 117 Wash.2d 37, 811 P.2d 673 (1991)).
[59] See Hume v. American Disposal Co., 124 Wash.2d 656, 674-75, 880 P.2d 988 (1994) (expanded cost award not allowed absent express statutory authorization).
[60] RCW 64.34.100(1) provides: "[C]onsequential, special, or punitive damages may not be awarded except as specifically provided in this chapter or by other rule of law."
[61] BLACK'S LAW DICTIONARY 394 (7th Ed.1999).
[62] RCW 64.34.100(1).